470 S.E.2d 177

**In the Interest of: TIFFANY MARIE S., Taylor Brook S., Children Under the Age of Eighteen Years**

**Nancy S.E., Appellant,**

**Department of Health and Human Resources, Appellee.**

No. 23198.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 6, 1996.

Decided March 20, 1996.

Kin Sayre, Beckley, Guardian Ad Litem.

Pat Lamp, Assistant Public Defender, Beckley, for Appellant.

Joanna Bowles, Assistant Attorney General, Charleston, for Appellee.

CLECKLEY, Justice:

Nancy S.E.[1] appeals a final order entered May 8, 1995, by the Circuit Court of Raleigh County, which terminated her parental rights to her two daughters, Tiffany Marie S. and Taylor Brook S. She asserts the circuit court erred by (1) failing to timely appoint counsel to represent her; (2) ordering an improvement period in excess of twelve months; (3) admitting irrelevant and prejudicial evidence of unrelated criminal charges;

---

**1.** .We follow our traditional practice in child abuse and neglect matters, and other cases involving sensitive facts, and do not use the last names of the parties. *See, e.g., In the Matter of* *Scottie D.,* 185 W.Va. 191, 406 S.E.2d 214 (1991); *State ex rel. Division of Human Servs. by Mary C.M. v. Benjamin P.B.,* 183 W.Va. 220, 395 S.E.2d 220 (1990).

(4) conducting the termination hearing in her absence, and (5) finding she abused or neglected her two children. Nancy S.E. also contends the West Virginia Department of Health and Human Resources (Department) did not timely formulate a family case plan or show she failed to comply with the case plan. After reviewing the record, we find no reversible error and affirm the decision of the circuit court.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On February 24, 1993, Alice Oglesby, a social worker with the Department, filed a petition pursuant to W.Va.Code, 49–6–1 (1992),[2] alleging that six-year-old Michael Emerson J., three-year-old Tiffany Marie S. and one-month-old Taylor Brook S. were abused and/or neglected children according to W.Va.Code, 49–1–3 (1992).[3] More specifi-

cally, the petition alleged that Brian S.[4] sexually molested Michael and Tiffany, that he had been arrested and charged with sexual assault,[5] and that Nancy S.E. had initially denied his guilt. The Department also expressed concern that Nancy S.E. would not be able to protect her children should Brian S. be released on bond, and the Department sought legal and physical custody of the children, but placed Taylor, Tiffany, and Michael with Nancy S.E.

The circuit court entered an order on February 24, 1993, filing the Department's petition, setting the matter for further hearing, advising the parties of their right to counsel, and granting the Department temporary custody. On April 19, 1993, the circuit court held a hearing, at which Nancy S.E. appeared unrepresented by counsel.[6] The circuit court continued the temporary legal and physical custody of the three children with the Department for an additional ninety

---

**2.** W.Va.Code, 49–6–1(a), states, in part:

"If the state department or a reputable person believes that a child is neglected or abused, the department or the person may present a petition setting forth the facts to the circuit court in the county in which the child resides, or to the judge of such court in vacation. The petition shall be verified by the oath of some credible person having knowledge of the facts. The petition shall allege specific conduct including time and place, how such conduct comes within the statutory definition of neglect or abuse with references thereto, any supportive services provided by the state department to remedy the alleged circumstances and the relief sought. Upon filing of the petition, the court shall set a time and place for a hearing and shall appoint counsel for the child."

**3.** W.Va.Code, 49–1–3(a), defines an "abused child":

"'Abused child' means a child whose health or welfare is harmed or threatened by:

"(1) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home; or

"(2) Sexual abuse or sexual exploitation; or

"(3) The sale or attempted sale of a child by a parent, guardian, or custodian[.]"

W.Va.Code, 49–1–3(g)(1), defines a "neglected child":

"'Neglected child' means a child:

"(A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when such refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian; or

"(B) Who is presently without necessary food, clothing, shelter, medical care, education or supervision because of the disappearance or absence of the child's parent or custodian[.]"

The statute was amended in 1994. The minor changes do not affect our determination of this case.

**4.** Nancy S.E. and Brian S. were married at the time the Department filed the February, 1993, abuse and neglect petition. In August, 1993, Nancy S.E. divorced Brian S.

**5.** Brian S. ultimately was charged with twenty-three counts of sexual assault against Michael and Tiffany and against the sister of Nancy S.E. Subsequently, Brian S. pleaded guilty to four of these counts (involving Nancy S.E.'s sister) and received four one-to-five year sentences: two sentences to run concurrently and the remaining two sentences to run concurrently with each other, but consecutively to the first two sentences.

**6.** The record is unclear as to whether the circuit court informed Nancy S.E. of her right to have counsel appointed for her if she was indigent. *See* W.Va.Code, 49–6–2(a) (1992).

days.[7]

Nancy S.E. then determined she was unable to deal with all three children and sent Michael to live with her mother and Tiffany to stay with a family friend. On July 13, 1993, the circuit court held a preliminary hearing at which Nancy S.E. again appeared unrepresented by counsel. The circuit court further continued the temporary legal and physical custody of Taylor, Tiffany, and Michael[8] with the Department. The circuit court also granted Nancy S.E. a twelve-month improvement period and ordered the Department and Nancy S.E. to jointly formulate a family case plan within thirty days.[9] Following this hearing, the Department placed Tiffany in foster care in August, 1993.

Throughout the fall of 1993, Taylor continued to reside with Nancy S.E. The Department provided supervised visitation between Nancy S.E. and Tiffany because Nancy S.E. admitted she was seeing Brian S. Nancy S.E. worked at various jobs during this period and left Taylor with a babysitter for days and weeks at a time. The Department responded to several complaints that Taylor's babysitter was providing an unsuitable environment but found no evidence of inadequate conditions. In March, 1994, Nancy S.E. informed the Department she wanted to give Taylor to a male friend and his girlfriend. The Department on March 9, 1994, placed Taylor in foster care incident to her change of guardianship. Nancy S.E. subsequently stated she would like to have Taylor returned to her.

The circuit court held a hearing on May 19, 1994, at which Nancy S.E. appeared in person and by counsel.[10] As a result of this hearing, the circuit court ordered the Department to formulate a family case plan, directed Taylor's return to Nancy S.E. by July 5, 1994, and extended the improvement period until July 18, 1994.

Thereafter, the Department returned Taylor to Nancy S.E. on July 4, 1994. During the July 18, 1994, hearing, the parties reached an agreement which the circuit court entered on September 14, 1994. The agreed order extended the improvement period for an additional three months, returned Taylor's full custody to Nancy S.E., dismissed the Department's petition as to Taylor, and continued the Department's custody of Tiffany. The Department then returned Tiffany to Nancy S.E. on August 23, 1994. At an October 17, 1994, hearing, the circuit court accepted an agreed order whereby the Department agreed to return Tiffany's full custody to Nancy S.E. and to monitor the family for an additional three months.

The record indicates that during the fall of 1994, Nancy S.E. again worked at various jobs for up to eighty hours a week and frequently left Taylor and Tiffany with day-care providers and babysitters for periods of three to four weeks. In late November, 1994, Nancy S.E. telephoned Kim Peck and admitted using crack cocaine. Nancy S.E. also stated she was performing undercover work for the police to prevent being arrested on bad check charges. On November 29, 1994, the Department placed Taylor and Tiffany in respite foster care. Nancy S.E. alternately tried to regain custody of the girls and agreed to their placement in respite foster care. She also missed appointments with home services and scheduled visitations with her daughters.

---

7. It should be noted that the circuit court did not refer to this custodial arrangement as an improvement period.

8. Michael is no longer a party to the abuse and neglect proceeding. By an agreed order entered September 14, 1994, Nancy S.E. voluntarily relinquished legal and physical custody of Michael to her mother, Judy R., thereby dismissing that portion of the Department's petition. Therefore, further reference to Michael is omitted.

9. This family case plan was signed by Kim Peck, a child protective services worker, on November

2, 1993, and by Nancy S.E. on March 17, 1994. Explaining this delay, Ms. Peck stated:

"I was unable to make enough contact with Nancy due to the amount of work I have and at times I didn't hear from Nancy. I give my court cases priority when doing family case plans and I am still unable to get them done in thirty days. Nancy and I always talked about what we were working on even though it wasn't in writing."

10. Nancy S.E. was represented by appointed counsel at all subsequent hearings in this matter.

The circuit court held a hearing on January 6, 1995, during which Kim Peck testified as to Nancy S.E.'s self-reported drug use and undercover work. Additionally, Nancy S.E. indicated she would voluntarily relinquish her parental rights to Taylor and Tiffany if Brian S. would do the same. Following this hearing, Nancy S.E. moved to Florida and decided she did not want to relinquish her parental rights to her two daughters. The circuit court on January 10, 1995, entered an order ratifying the Department's emergency taking of Taylor and Tiffany and granting the Department temporary legal custody of the girls once more.

Nancy S.E. continued to reside in Florida and maintained regular telephone contact with Taylor and Tiffany. However, she failed to attend drug rehabilitation meetings or to keep in regular contact with the Department.[11] On March 14, 1995, the Department filed a second petition pursuant to W.Va.Code, 49–6–1,[12] alleging that two-year-old Taylor and five-year-old Tiffany were abused and/or neglected children.[13] More specifically, the petition recounted the children's case history, beginning with the February 24, 1993, petition, and detailed Nancy S.E.'s unstable lifestyle and indecisiveness regarding custody of Taylor and Tiffany. In sum, the Department emphasized the girls' need for emotional stability and sought termination of Nancy S.E.'s parental rights.[14]

On May 1, 1995, the circuit court held a final hearing in this matter. At the hearing, Nancy S.E.'s attorney requested a continuance, reporting that Nancy S.E. was "stuck in Georgia."[15] The circuit court denied this motion. Later in the proceedings, the circuit court admitted evidence of Nancy S.E.'s numerous outstanding arrest warrants in West Virginia for bad checks, commenting that her absence was most likely related to these charges. In addition, the Department presented the testimony of Kim Peck. Ms. Peck testified that Nancy S.E. was difficult to locate; failed to attend counseling sessions, rehabilitative treatments, and parenting classes; and was fired from numerous jobs. Ms. Peck further indicated that, given the case history, the Department felt Nancy S.E. would not be able to change her behavior or become an effective parent. The Department also called as a witness Saundra Kate Leeber, Tiffany's therapist. Ms. Leeber stated that Tiffany's demeanor had greatly improved after placement with stable foster families but cautioned that Tiffany's best interests require a stable, permanent placement. Finally, the guardian ad litem recommended termination of Nancy S.E.'s parental rights.

Based on the foregoing evidence, the circuit court entered a final order on May 8, 1995, finding Taylor and Tiffany to be abused and/or neglected children. The circuit court noted further that Nancy S.E. was an unstable person who had not complied with the Department's family case plan, that there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected in the near future, and that the girls require stability and continuity of care. In conclusion, the circuit court terminated Nancy S.E.'s parental rights to Taylor and Tiffany and placed their permanent guardianship with the Department.

## II.

### DISCUSSION

After a brief discussion of the appropriate standard of review, we split our analysis into

---

**11.** Kim Peck reported in February, 1995, that "Nancy has not had contact with me on a regular basis. On January 18, 1995 Nancy called me and then I didn't hear from her again until February 15, 1995. Every time she gave me a phone number and I tried to call her, it would be disconnected."

**12.** The pertinent part of W.Va.Code, 49–6–1, is set forth in note 2, *supra*.

**13.** The pertinent part of W.Va.Code, 49–1–3, is set forth in note 3, *supra*.

**14.** The petition also sought to terminate the parental rights of Brian S. (Tiffany's father) and Jerry M. (Taylor's father). Because these individuals are not parties to the present appeal, we omit further discussion of their interests.

**15.** On the morning of May 1, 1995, Nancy S.E. left a message on her attorney's answering machine stating she was "stuck in Georgia." She did not further explain her anticipated absence.

six segments. First, we consider the applicability of the harmless error doctrine to the failure to promptly appoint counsel in child abuse and neglect cases. Next, we examine the voluntary extension of an improvement period in excess of twelve months. Thirdly, we review the circuit court's rulings regarding the admission of "prejudicial evidence" and the denial of the request for a continuance or postponement of the final adjudicatory hearing. Finally, we mull the circuit court's findings on abuse and neglect and the lack of compliance with the family case plan under the deferential standard of review that pertains in this context.

At the outset, it should be noted that this case has lingered in the circuit court for approximately three years. Although what we say below adequately explains the reason this judgment should be affirmed, we feel obliged to comment on a larger issue. We are hard pressed to fathom why abuse and neglect cases are not given the same priority at the circuit court level as asbestos cases, personal injury cases, criminal cases, and cases involving boundary disputes when W.Va.Code, 49–6–2(d) (1992), rigidly commands that child abuse and neglect

"proceeding[s] ... shall, to the extent practicable, be given priority over any other civil action before the court, except proceedings under article two-a [Section 48–2A–1 et seq.], chapter forty-eight of this code and actions in which trial is in progress. Any petition filed under the provisions of this article shall be docketed immediately upon filing. Any hearing to be held at the end of an improvement period and any other hearing to be held during any proceedings under the provisions of this article shall be held as nearly as practicable on successive days and, with respect to said hearing to be held at the end of an improvement period, shall be held as close in time as possible after the end of said improvement period."

Rule 8 of the Rules on Time Standards for Circuit Courts further instructs circuit courts to expeditiously process and timely dispose of abuse and neglect proceedings.[16]

Furthermore, we have repeatedly urged circuit courts not only to give these matters serious and detailed consideration but also to advance them to the top of the trial calendar. In Syllabus Point 1 of *In the Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991), we expressed our concern over the all-too-frequent delays accompanying abuse and neglect cases:

"Child abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security. Consequently, in order to assure that all entities are actively pursuing the goals of the child abuse and neglect statutes, the

---

16. Rule 8 of the Time Standards for Circuit Courts provides in full:

"Abuse and neglect proceedings.

"(a) *Applicability.*—The time standards set forth in this rule are not intended to supersede, but to supplement, statutory provisions applicable to civil abuse and neglect proceedings.

"(b) *Pre-adjudicatory motions.*—An order shall be entered on pre-adjudicatory motions within one week of hearing on the motion.

"(c) *Preliminary hearing.*—If a preliminary hearing is held, it shall be conducted within two weeks from the filing of the petition.

"(d) *Adjudication.*—Unless continued for good cause to a date certain or unless a pre-adjudicatory improvement period is granted, the adjudicatory order shall be entered within one month of the filing of the petition if the child is not in temporary custody. If a pre-adjudicatory improvement period is granted, the adjudicatory order shall be entered within two weeks of the end of the pre-adjudicatory improvement period.

"(e) *Disposition.*—If abuse or neglect is found, the dispositional order placing the child shall be entered within six weeks of the adjudicatory order.

"(f) *Post-adjudicatory improvement period.*—A further dispositional order shall be entered within two weeks of the end of the post-adjudicatory improvement period.

"(g) *Monitoring improvement period.*—An assessment of the status of the child(ren) and the progress of the parent(s) towards satisfying the conditions of the improvement period shall be conducted on a monthly basis.

"(h) *Modification.*—An order shall be entered on a motion to modify within one month of the filing of the motion.

"(i) *Foster care review.*—A further dispositional order shall be entered within one month of the filing of a petition for foster care review.

"(j) *Reporting standard.*—The reporting standard from the filing of the petition to disposition shall be twelve months."

Administrative Director of this Court is hereby directed to work with the clerks of the circuit court to develop systems to monitor the status and progress of child neglect and abuse cases in the courts."

We additionally recognized

"[t]he clear import of the statute [W.Va. Code, 49–6–2(d) ] is that matters involving the abuse and neglect of children shall take precedence over almost every other matter with which a court deals on a daily basis, and it clearly reflects the goal that such proceedings must be resolved as expeditiously as possible."

Syl. pt. 5, *Carlita B., supra. See also In the Matter of Brian D.*, 194 W.Va. 623, 634–35, 461 S.E.2d 129, 140–41 (1995) (lamenting failure of circuit courts to accord abuse and neglect cases priority pursuant to *Carlita B.); State ex rel. S.C. v. Chafin*, 191 W.Va. 184, 192, 444 S.E.2d 62, 70 (1994) (refusing to tolerate lengthy delays in child abuse and neglect cases); Syl. pt. 3, *Boarman v. Boarman*, 190 W.Va. 533, 438 S.E.2d 876 (1993), *quoting* Syl. pt. 1, *Carlita B.*

█ It is vital to the rule of law that legislative and appellate commands be honored. A judge is free, of course, to manage his or her own docket but, when such managerial decisions transgress appellate commands, it is incumbent upon the trial judge to avoid the further (and quite different) impression that he or she has crossed the line into disregard. The circumstances of the case at bar underscore this danger. A circuit court is not at liberty to disregard lawful directives of the Legislature and this Court simply because those directives conflict with the judge's individual notions of efficiency or docket control. In the last analysis, it is crucial to public confidence in the courts that judges be seen as enforcing the law and as obeying it themselves. Exactly so. This is the short of it—and there is no long of it.[17]

### A.

*Standard of Review*

█ Although conclusions of law reached by a circuit court are subject to *de*

*novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court "shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected[.]" W.Va.Code, 49–6–2(c). Under Rule 52(a) of the West Virginia Rules of Civil Procedure, these findings shall not be set aside by a reviewing court "unless clearly erroneous." "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Board of Educ. v. Wirt*, 192 W.Va. 568, 579 n. 14, 453 S.E.2d 402, 413 n. 14 (1994), *quoting United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948). However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm " '[i]f the [circuit] court's account of the evidence is plausible in light of the record viewed in its entirety[.]' " *In re Jonathan Michael D.*, 194 W.Va. 20, 25, 459 S.E.2d 131, 136 (1995), *quoting Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985). Finally, "[w]hen findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings[.]" 470 U.S. at 575, 105 S.Ct. at 1512, 84 L.Ed.2d at 529. Deference is appropriate because the trial judge was on the spot and is better able than an appellate court to decide whether the error affected substantial rights of the parties. *Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995). Applying this blend of deferential-plenary standards of review to the facts of this case, we are of the opinion that the circuit court's findings were not clearly erroneous nor wrong as a matter of law.

### B.

*Appointment of Counsel*

█ Nancy S.E. first argues the circuit court erred by failing to timely appoint coun-

---

**17.** Under our supervisory authority over circuit courts, we may require the courts to follow procedures deemed desirable from the viewpoint of

sound judicial policy and practice although they are not specifically commanded by the Constitution or the Legislature.

sel to represent her. She asserts she was unrepresented by counsel from February 23, 1993, until May, 1994. More specifically, Nancy S.E. complains she was not represented during the hearings held on February 23, 1993; April 19, 1993; and July 13, 1993.

 A circuit court has broad statutory and case authority to appoint counsel in child abuse and neglect cases. As suggested above, these are important proceedings and the appointment and participation of counsel will often be critical to the outcome. Abuse and neglect proceedings are designed to be adversarial, *see In re Christina L.,* 194 W.Va. 446, 453, 460 S.E.2d 692, 699 (1995), and the circuit court's role is to ensure that litigants are adequately represented by counsel from the beginning to the end of these proceedings. In emphasizing the role of the circuit court and counsel, we do not write on a pristine page. This Court recently constructed a bright-line rule to be followed when there is any doubt as to how to proceed. In Syllabus Point 8 of *In the Matter of Lindsey C.,* 196 W.Va. 395, 473 S.E.2d 110 (1995), we stated:

"Circuit courts should appoint counsel for parents and custodians required to be named as respondents in abuse and neglect proceedings *incident to the filing of each abuse and neglect petition.* Upon the appearance of such persons before the court, evidence should be promptly taken, by affidavit and otherwise, to ascertain whether the parties for whom counsel has been appointed are or are not able to pay for counsel. In those cases in which the evidence rebuts the presumption of inability to pay as to one or more of the parents or custodians, the appointment of counsel for any such party should be promptly terminated upon the substitution of other counsel or the knowing, intelligent waiver of the right to counsel. Counsel appointed in these circumstances are entitled to compensation as permitted by law." (Emphasis in original).

We caution circuit courts to follow this procedure in order to prevent potential prejudice to unrepresented indigent parents in abuse and neglect proceedings. W.Va.Code, 49–6–2(a) (1992), provides, in part:

"In any proceeding under the provisions of this article, [the] parents ... shall have the right to be represented by counsel at every stage of the proceedings and shall be informed by the court of their right to be so represented and that if they cannot pay for the services of counsel, that counsel will be appointed. If the other parties have not retained counsel and the other parties cannot pay for the services of counsel, the court shall, by order entered of record, at least ten days prior to the date set for hearing, appoint an attorney or attorneys to represent the other party or parties and so inform the parties."

It appears that in the proceedings involving the original petition filed February 24, 1993, the circuit court did inform Nancy S.E. of her right to be represented by counsel. However, the record does not indicate whether the circuit court ever informed Nancy S.E. of her right to have counsel appointed to represent her in the event she could not afford to hire an attorney. Regardless of the information provided by the circuit court, Nancy S.E. does not assert on appeal that she was indigent during the period in question.

Assuming, arguendo, that Nancy S.E. was entitled to appointed counsel during the period in question, we find she was not prejudiced by the circuit court's failure to earlier appoint counsel. During the February 23, 1993, hearing, the circuit court granted temporary legal and physical custody of Taylor and Tiffany to the Department, which voluntarily placed the children with Nancy S.E. Thus, Nancy S.E. retained the right to keep Taylor and Tiffany in her home and was not prejudiced by the circuit court's ruling or the Department's actions. Similarly, Nancy S.E. was not prejudiced by the April 19, 1993, proceedings; the circuit court merely ordered a ninety-day continuance of the temporary custody, and the Department did not disturb the children's placement with Nancy S.E. Finally, during the July 13, 1993, hearing, the circuit court again continued temporary custody with the Department, granted Nancy S.E. a twelve-month improvement period, and ordered the Department and Nancy S.E. to jointly develop a family case plan.

Thus, Nancy S.E. was permitted an opportunity to regain her children's full custody and directed to participate in the development of the family case plan.

It should be noted that Taylor and Tiffany remained with Nancy S.E. throughout this entire period until Nancy S.E. decided she could no longer care for the girls and voluntarily relinquished their care to the Department.[18] Moreover, both girls were returned to Nancy S.E.'s care, although she ultimately agreed to their later placement in respite foster care.[19] We do not find that Nancy S.E. was prejudiced by the failure of the circuit court to appoint counsel. It appears that Nancy S.E. is arguing that, when counsel is not appointed timely, all proceedings conducted without counsel should be presumed void. Though it certainly can be argued that strong reasons of public policy justify such a burden-shifting scheme, our cases have not committed to such a theory except in criminal cases involving critical stages. *See State ex rel. Daniel v. Legursky,* 195 W.Va. 314, 321, 465 S.E.2d 416, 423 (1995). While this point is intellectually interesting, we defer a definitive decision on it to a different day. After all, there is no clear indication that Nancy S.E. requested the appointment of counsel because of indigency.

## C.

### *Duration of Improvement Period*

■ Nancy S.E. asserts the circuit court erroneously ordered an improvement period in excess of twelve months. Pursuant to W.Va.Code, 49–6–2(b) (1992),

"any parent or custodian may, prior to final hearing, move to be allowed an improvement period of three to twelve months in order to remedy the circumstances or alleged circumstances upon which the proceeding is based. The court shall allow one such improvement period unless it finds compelling circumstances to justify a denial thereof[.]."

In this case, the circuit court granted Nancy S.E. a twelve-month improvement period.[20] At the conclusion of this improvement period in July of 1994, the parties submitted an agreed order extending the improvement period for an additional three months. While the statute permits a maximum improvement period of only twelve months, Nancy S.E. and the Department voluntarily extended the duration of the improvement period beyond the maximum limit.[21]

We find no reversible error in this situation. At no time during the proceedings below did Nancy S.E. voice any objection to the extension of time. Rather, she vigorously (and successfully) sought an extension of time. In other words, Nancy S.E. chose to roll the dice, apparently confident that more time would improve her position before the court at her final hearing. Having gambled and lost, she is in a perilously poor position to pursue this point. In any event, we regularly turn a deaf ear to error that was invited by the complaining party. *See Smith v. Bechtold,* 190 W.Va. 315, 438 S.E.2d 347 (1993) ("invited error" when appellant moved

---

**18.** During the spring of 1993, Nancy S.E. sent Tiffany to stay with a family friend; the Department placed Tiffany in foster care in August, 1993. In March, 1994, Nancy S.E. wished to permanently give Taylor to a different family friend; the Department placed Taylor in foster care on March 9, 1994, in preparation for this arrangement.

**19.** On July 4, 1994, the Department returned Taylor's full custody to Nancy S.E. and, on August 23, 1994, the Department returned Tiffany's full custody to Nancy S.E. While the circuit court did ultimately terminate Nancy S.E.'s parental rights, the Department did not seek termination until March, 1995, nearly one year *after* counsel was appointed to represent her.

**20.** Nancy S.E. contends that prior to the twelve-month improvement period the circuit court

granted a ninety-day improvement period during the April 19, 1993, hearing. The record does not support this contention as the circuit court merely granted a ninety-day continuance of the status quo.

**21.** This is not to suggest that we in any way encourage agreed-upon extensions of improvement periods beyond the time allowed by statute. Furthermore, although the order granting the agreed improvement period extension reflects the guardian ad litem was present, the order gives no indication whether the guardian ad litem took a position on this issue. A guardian ad litem clearly has a right to enforce the child's statutory right to a limit on the extent and duration of improvement periods.

for the very delay that was the subject of the appeal). As a result, Nancy S.E. cannot now complain on appeal that she was harmed by a fifteen-month improvement period when she agreed to this arrangement. Moreover, she has not shown that she was prejudiced by this improvement period.

### D.

### Admission of Criminal Charges

Nancy S.E. next contends the circuit court erred by admitting irrelevant and prejudicial evidence of unrelated criminal charges. She states that during the January 6, 1995, hearing, the State introduced evidence that she was performing undercover work for the police to prevent arrest on bad check charges. In the same manner, the State presented testimony at the May 1, 1995, hearing that Nancy S.E. had numerous outstanding arrest warrants for bad check charges. Nancy S.E. maintains this evidence was highly prejudicial and unrelated to the abuse and neglect proceedings.

■■■ The first question is easily answered. The decision whether to admit evidence rests within the sound discretion of the circuit court. *See State v. Guthrie,* 194 W.Va. 657, 680–81, 461 S.E.2d 163, 186–87 (1995). This discretion remains fully intact when the business of the day is abuse and neglect proceedings. Appellate review is therefore deferential; we will interfere with a circuit court's ruling on evidentiary matters only if an appellant demonstrates an abuse of the circuit court's substantial discretion. *See State v. McGinnis,* 193 W.Va. 147, 159, 455 S.E.2d 516, 528 (1994). We discern no abuse in this situation.

■■■ Rather, we find Nancy S.E.'s assignment of error regarding the January 6, 1995, hearing to be without merit as she did not properly preserve her objection for appeal. The West Virginia Rules of Evidence declare that parties must object to the wrongful offer of evidence at a particular time and with

reasonable specificity. The failure to object at the time and in the manner designated by Rule 103(a) of the West Virginia Rules of Evidence is treated as a procedural default, with the result that the evidence, even if erroneous, becomes the facts of the case. West Virginia practice imposes the same duty of diligence in regard to nonjury cases. Silence in the circuit court typically constitutes a waiver of objection. *See* W.Va. R.Evid. 103(a)(1).[22]

■■■ The transcript of the January 6, 1995, hearing reveals that Nancy S.E.'s counsel never objected to the introduction of evidence of her undercover police work or moved to strike this testimony from the record. Evidence of Nancy S.E.'s criminal record and undercover drug work, while not dispositive, is a relevant factor in the circuit court's determination of her ability to provide a safe home environment for her children. To be sure, an appellate court may review an unpreserved error if the error is "plain." *See* W.Va.R.Evid. 103(d). However, this doctrine is reserved for the most egregious circumstances. *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995). Normally, the alleged error must have seriously affected the fairness or integrity of the trial. We find no error in this case.

■■■ Finally, Nancy S.E. was not prejudiced by the admission of her bad check charges during the May 1, 1995, hearing. Upon admitting this testimony, the circuit court expressly stated these charges were not indicative of abuse and neglect but were more probative as to why Nancy S.E. was not present at the final hearing. Therefore, the circuit court did not abuse its discretion in admitting evidence of Nancy S.E.'s unrelated criminal charges.

### E.

### Absence of Nancy S.E. At Final Termination Hearing

■■■ Nancy S.E. complains the circuit court improperly conducted the final termi-

---

22. Rule 103(a) of the West Virginia Rules of Evidence (1996) provides in part:

"(a) *Effect of erroneous ruling.*—Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

"(1) Objection.—In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]"

nation hearing in her absence. Without doubt this is her most serious assignment of error. On the morning of May 1, 1995, the date of the final hearing, Nancy S.E. left a message on her attorney's answering machine stating she was "stuck in Georgia" and would not be at the termination hearing. During the final hearing, counsel for Nancy S.E. informed the circuit court of Nancy S.E.'s absence and requested a continuance of the proceedings. The circuit court denied this motion and proceeded to take evidence on the issue of abuse and neglect. Nancy S.E. asserts the circuit court should have continued the hearing to a time when she could be present so she could testify and explain her alleged failure to complete the Department's family case plan and her current, more stable lifestyle.

▮▮▮ Whether a party should be granted a continuance for fairness reasons is a matter left to the discretion of the circuit court, and a reviewing court plays a limited and restricted role in overseeing the circuit court's exercise of that discretion. *State v. Judy*, 179 W.Va. 734, 372 S.E.2d 796 (1988) (when a matter is committed to the discretion of the trial court, its decision will not be disturbed unless there is a clear showing of abuse of such discretion); *State ex rel. Holstein v. Casey*, 164 W.Va. 460, 265 S.E.2d 530 (1980) (accord). Of course, discretion is not to be confused with imperiousness. *State v. Bush*, 163 W.Va. 168, 183, 255 S.E.2d 539, 547 (1979). When a circuit court rejects a civil litigant's request for a continuance because the party is unable to attend, the court must articulate reasons for taking that action, and those reasons must be plausible. Therefore, we structure our review in accordance with four salient factors that appellate courts consider when reviewing denials of requests for a continuance. First, we consider the extent of Nancy S.E.'s diligence in her efforts to be present and to ready her defense prior to the date set for the hearing.

Second, we consider how likely it is that the need for a continuance could have been met if the continuance had been granted. Third, we consider the extent to which granting the continuance would have inconvenienced or been contrary to the interests of the circuit court, the witnesses, and the other litigants, including the public interest in the prompt disposition of these types of proceedings. Finally, we consider the extent to which Nancy S.E. might have suffered harm as a result of the circuit court's denial.[23]

Again, we acknowledge that the determination as to whether a denial of a continuance constitutes an abuse of discretion must be made on an *ad hoc* basis. When confronted with a motion for a continuance, the trial court may have a variety of concerns. Obviously, the reasons that the movant contemporaneously adduces in support of the request are important. Then, too, the court is likely to take into account prior postponements. Thus, the test for deciding whether the circuit court abused its discretion is not mechanical; it depends on the reasons presented to the circuit court at the time the request was made. In other words, this issue must be decided in light of the circumstances presented, focusing upon the reasons for the continuance offered to the circuit court when the request was denied. As we discuss above, there are important interests implicated other than those of the parents. In addition to the sacred rights of the affected children, there is a societal interest in providing for speedy disposition of abuse and neglect cases which exists separate from, and at times in opposition to, the parents' interest. The inability of courts to bring these matters to a prompt disposition contributes immeasurably to large backlogs of abuse and neglect cases and often prevents the courts from doing what is in the best interests of the children. The older a child becomes while waiting in the judicial system, the more diffi-

---

23. In *Hutchinson v. Montgomery Memorial Park Corp.*, 128 W.Va. 419, 424–25, 36 S.E.2d 889, 891–92 (1945), we set forth the showing a party ordinarily must make when seeking a continuance to obtain absent witnesses. This showing includes the substance of the desired testimony; the relevance of the testimony; that the testimony could be obtained if a continuance were granted; and due diligence was exercised to obtain the testimony prior to the date of the proceedings. Because the elements of the showing specified in *Hutchinson* are applicable to various factors which we have identified as relevant to our review, we address these elements as part of our broader inquiry.

cult quality permanent placement becomes. In this context, abuse can be found in the denial of a continuance only when it can be seen as "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay[.]'" *Morris v. Slappy,* 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610, 620 (1983), *quoting Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921, 931 (1964). It is in the province of the circuit court to manage its docket, and within that province, to decide what constitutes a reasonable time to be prepared to defend these type allegations.[24]

In determining whether the circuit court acted in an arbitrary or unreasonable manner, we consider the above relevant factors together, evaluating the extent of Nancy S.E.'s showing on each one. In order to obtain a reversal, Nancy S.E. must show at a minimum that she suffered prejudice as a result of the denial of her request. However, the mere fact that an appellant suggests a continuance could benefit him or her does not necessarily require the circuit court to grant the continuance. To be perfectly clear, even the presence of prejudice on the part of a party in an abuse and neglect proceeding does not require the circuit court to grant the requested relief if the other factors identified above are entitled to more weight. The weight we attribute to any single factor may vary with the extent of the showing on other factors. We regard none of the factors identified above as either a necessary or sufficient condition to the finding of an abuse of discretion. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. Each case is *sui generis,* and the compendium of relevant factors varies from situation to situation. In sum, these factors have no talismanic qualities; a court must still engage in a difficult and sensitive balancing process. But, because these proceedings involve fundamental rights of the parents and children, this process, which is specifically confirmed in our statute, must be carried out with full recognition of society's interests in speedy dispositions.

Here, the balance tilts heavily against Nancy S.E. and the circuit court offered an adequate explanation of why it believed the factors advanced by Nancy S.E. were not sufficiently compelling to justify another postponement of the ultimate judgment. Her reproof is mostly sound and fury, signifying little. At the time the request for a continuance was made, the circuit court had no assurance that Nancy S.E. would ever appear. As the circuit court suggested, there were outstanding criminal charges against Nancy S.E. in West Virginia. Although she states she wanted to testify in order to explain why she did not complete the family case plan, Nancy S.E. does not show that she exercised due diligence in attempting to attend the final hearing. Moreover, the rights of the public and, more importantly, the children are implicated when finality is not promptly achieved in these proceedings. This case had been pending in the circuit court for three years, and the rights and interests of the children were dangling in the balance. Although the circuit court could have afforded Nancy S.E. the continuance, it chose not to do so. In the absence of either a mistake of law or a palpable abuse of discretion, we cannot substitute our judgment for the circuit court's judgment. We need go no further.

In the final analysis, it is the circuit court that is in the best position to weigh competing interests in deciding whether to grant a continuance or postponement. An appellate court looks primarily to the persuasiveness of the trial court's reasons for refusing the continuance and gives due regard not only to the factors that inform our opinion but also to its superior point of vantage. We may not reweigh the grounds afresh and, absent an abuse of discretion, the decision of the circuit court to reject a request for a continuance will not be overturned by an appellate court. In this instance, the record confirms that the lower court was rather generous, rather than grudging, in the time allotted to bring this

24. In *Morris,* the Supreme Court observed that "[t]rial judges necessarily require a great deal of latitude in scheduling trials," 461 U.S. at 11, 103 S.Ct. at 1616, 75 L.Ed.2d at 619, not the least of which is that of assembling the witnesses and lawyers at the same time. This burden counsels against continuances except for compelling reasons.

case to a final disposition. Therefore, we find the circuit court did not abuse its discretion in refusing Nancy S.E.'s request for a continuance.

### F.

#### *Finding of Abuse or Neglect*

■ The next question is whether the circuit court's finding of abuse and neglect is supportable. Nancy S.E. argues the evidence fails to meet its heightened burden of proof. The Department is required to prove the "conditions existing at the time of the filing of the petition ... by clear and convincing proof." W.Va.Code, 49–6–2(c) (1992). Determining whether a parent or guardian has neglected or abused his or her children, like most adversarial-oriented explorations, is a predominantly factbound enterprise. It follows that, absent a mistake of law, an appellate tribunal should disturb a circuit court's determination only if it is clearly erroneous. This means, of course, that if there are two or more plausible interpretations of the evidence, the circuit court's choice among them must hold sway.

■ No clear error looms, and we find the circuit court was not clearly wrong in holding the Department satisfied its burden of proof. The evidence throughout this case concerned Nancy S.E.'s unstable lifestyle and provided examples of her indecisiveness about regaining full custody of her children, her repeated firings from good jobs, her pattern of leaving Taylor and Tiffany with babysitters for extended periods of time, her renewed usage of crack cocaine, and her failure to attend parenting classes

and drug rehabilitation treatment sessions. During the final hearing, the Department called Kim Peck, who elaborated on the petition's allegations, and therapist Saundra Kate Leeber, who testified as to the emotional damage Tiffany had suffered from her unstable lifestyle with Nancy S.E. Finally, throughout the entire three-year case history, the Department filed regular court summaries to keep the circuit court apprised of recent developments.[25] Upon a review of the entire record, we find the circuit court had before it sufficient evidence with which to terminate Nancy S.E.'s parental rights.[26]

We take no pleasure in upholding a finding of abuse or neglect of children. But the court below did not reach this conclusion lightly, and the record, carefully examined, does not give rise to a firm conviction that the circuit court's judgment is wide of the mark. Accordingly, the finding of abuse and neglect must stand.

### G.

#### *Family Case Plan*

■ First, Nancy S.E. contends the Department failed to timely formulate a family case plan. In Syllabus Point 3 of *State ex rel. West Virginia Department of Human Services v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987), we directed:

"Under W.Va.Code, 49–6–2(b) (1984), when an improvement period is authorized, then the court by order shall require the Department of Human Services to prepare a family case plan pursuant to W.Va.Code, 49–6D–3 (1984)."

---

**25.** Although the court summaries were made a part of the record in this case, it is unclear whether the circuit court admitted these reports into evidence. We admonish circuit courts that while these summaries are suitable to be made a part of the record in abuse and neglect cases, the better practice is to formally admit these reports into evidence to ensure that all the information regarding the progress of the case is properly before the courts.

**26.** As we expressed in *In re Elizabeth Jo "Beth" H.*, 192 W.Va. 656, 659, 453 S.E.2d 639, 642 (1994):

"Consistent with our cases in other areas, we give appropriate deference to findings of the circuit court. In this regard, the circuit

court has a superior sense of what actually transpired during an incident, by virtue of its ability to see and hear the witnesses who have firsthand knowledge of the events. Appellate oversight is therefore deferential, and we should review the circuit court's findings of fact following an evidentiary hearing under the clearly erroneous standard. If the circuit court makes no findings or applies the wrong legal standard, however, no deference attaches to such an application. Of course, if the circuit court's findings of fact are not clearly erroneous and the correct legal standard is applied, the circuit court's ultimate ruling will be affirmed as a matter of law."

*See also In re Elizabeth Jo "Beth" H.,* 192 W.Va. 656, 453 S.E.2d 639 (1994). W.Va. Code, 49–6D–3(b) (1984), further requires "the family case plan ... shall be furnished to the court within thirty days after the entry of the order referring the case to the department[.]"

During the proceedings below, the circuit court ordered a twelve-month improvement period on July 13, 1993, causing the family case plan to become due in August, 1993. However, the Department did not complete the family case plan until November 2, 1993. Kim Peck explained the delay as follows: "I was unable to make enough contact with Nancy due to the amount of work I have and at time I didn't hear from Nancy.... Nancy and I always talked about what we were working on even though it wasn't in writing."

 While this delay is not excusable, we do find Nancy S.E. was not harmed by the late filing of the family case plan. In Syllabus Point 4 of *In the Interest of Carlita B.,* 185 W.Va. 613, 408 S.E.2d 365 (1991), we explained that the preparation of a family case plan is a joint venture between the parents and the Department:

> "In formulating the improvement period and family case plans, courts and social service workers should cooperate to provide a workable approach for the resolution of family problems which have prevented the child or children from receiving appropriate care from their parents. The formulation of the improvement period and family case plans should therefore be a consolidated, multi-disciplinary effort among the court system, the parents, attorneys, social service agencies, and any other helping personnel involved in assisting the family."

We recently reiterated this procedure in Syllabus Point 4 of *In the Matter of Brian D.,* 194 W.Va. 623, 461 S.E.2d 129 (1995). The family case plan essentially serves as a map by which the parents, the Department, and the circuit court can chart the parents' progress during the improvement period. As a result, it is especially important to alert the parents as to what they must do in order to regain custody of their children. Although the family case plan should have been filed earlier in this case, both the Department and Nancy S.E. were obligated to work diligently to complete the case plan within the requisite thirty-day period. It further appears that prior to filing the case plan the Department maintained contact with Nancy S.E. and instructed her about the case plan's goals. Lastly, Nancy S.E. initially satisfied the requirements of the case plan, resulting in the return of her children at the end of her improvement period. Therefore, we find Nancy S.E. was not prejudiced by the Department's late filing of the family case plan.

 Nancy S.E. further asserts the Department failed to show she did not comply with the requirements of the family case plan. Although the evidence suggests the Department proved Nancy S.E.'s noncompliance with the family case plan, the Department was not required to prove this point. "DHS [the Department of Human Services] is not obligated, as [Nancy S.E.] would have us believe, to prove its case by showing that she failed to comply with the family case plan." *West Virginia Dept. of Human Servs. v. Peggy F.,* 184 W.Va. 60, 63, 399 S.E.2d 460, 463 (1990). Rather, Syllabus Point 1 of *In the Interest of S.C.,* 168 W.Va. 366, 284 S.E.2d 867 (1981), recites the correct standard of proof in abuse and neglect cases:

> "W.Va.Code, 49–6–2(c) [1980], requires the State Department of Welfare [now the Department of Health and Human Resources], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition ... by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden."

*See also In re Christina L.,* 194 W.Va. 446, 460 S.E.2d 692 (1995). Moreover, we again emphasize what was made clear in *Carlita B.* 185 W.Va. at 626, 408 S.E.2d at 378:

> "As we explained in *West Virginia Dept. of Human Serv. v. Peggy F.,* 184 W.Va. 60, 64, 399 S.E.2d 460, 464 (1990), it is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve ... [the] overall atti-

tude and approach to parenting.' Thus, a judgment regarding the success of an improvement period is within the court's discretion regardless of whether or not the individual has completed all suggestions or goals set forth in family case plans.

'The improvement period is granted to allow the parent an opportunity to remedy the existing problems. The case plan simply provides an approach to solving them. As is clear from the language of the statute, ... the ultimate goal is restoration of a stable family environment, not simply meeting the requirements of the case plan.'

184 W.Va. at 64, 399 S.E.2d at 464."

Having previously determined that the circuit court did not err in concluding the Department satisfied its burden of proof, we decline to further address this issue.

### III.

### CONCLUSION

For the foregoing reasons, we affirm the decision of the Circuit Court of Raleigh County.

Affirmed.