# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **D.J., P.K., I.K., and C.K.**

**No. 17-0684** (Kanawha County 16-JA-364, 366, 367, and 368)

**FILED**

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother T.K., by counsel Elizabeth G. Kavitz, appeals the Circuit Court of Kanawha County's July 6, 2017, order terminating her parental rights to D.J., P.K., I.K., and C.K.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Melinda C. Dugas, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Sharon K. Childers, filed a response on behalf of the children in support of the circuit court's order. The DHHR and the guardian filed a supplemental appendix. On appeal, petitioner argues that the circuit court erred in denying her an improvement period, terminating her parental rights upon erroneous findings and insufficient evidence, and terminating post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2016, the DHHR filed an abuse and neglect petition alleging that petitioner failed to protect her daughter, D.J., from sexual abuse, physical abuse, and emotional abuse by D.J.'s stepfather. The DHHR alleged that D.J. told petitioner that her stepfather had sexually assaulted her in April of 2016 and that petitioner failed to report the allegations to the authorities. When petitioner took no action, D.J. reported the allegations to school employees. D.J. later recanted these allegations, and the DHHR alleged that petitioner persuaded D.J. to recant. The DHHR further alleged that a second incident of sexual abuse occurred in July of 2016, which prompted the filing of the petition. Petitioner, thereafter, waived her preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

In October of 2016, the circuit court held an adjudicatory hearing, during which the forensic interviewer who conducted all three of D.J.'s interviews testified. In those interviews, D.J. disclosed multiple incidents of sexual abuse by her stepfather. D.J. also disclosed that she reported the incidents to petitioner. D.J. reported that petitioner took no action and allowed the stepfather to continue living in the house, which caused D.J. to report the allegations to school personnel. One month later, D.J. gave a second interview in which she recanted the allegations. D.J. could not give a definite reason why she made up the allegations, but said that she came to the decision to recant on her own. However, D.J. also reported that her stepfather had returned to the home and was having contact with her before she recanted. Two months later, D.J. gave a third interview and reported that she had been newly abused by her stepfather and that her previous disclosures were true. In regard to the most recent incident, D.J. reported that her stepfather drug her into the laundry room and assaulted her. One of the other children allegedly witnessed part of the events, but did not testify. D.J. also stated that her family, including petitioner, pressured her to recant the earlier allegation. Ultimately, petitioner stipulated to adjudication and admitted a failure to protect D.J. from sexual abuse. Petitioner moved for a post-adjudicatory improvement period, and the circuit court held the motion in abeyance.

In November of 2016, the circuit court held an evidentiary hearing on petitioner's motion for a post-adjudicatory improvement period. Petitioner's treating therapist testified that petitioner could work through her parenting issues within six months. The therapist reported that petitioner believed she would have taken action if she had some clue that sexual abuse was taking place. The therapist based her opinion primarily on petitioner's self-reporting. A DHHR worker testified that petitioner had been compliant with services thus far. Further, one of petitioner's previous co-workers testified that she believed petitioner would fulfill the obligations of an improvement period. However, the clinical psychologist who evaluated petitioner testified that petitioner's very low test score indicated a likely deficiency in future parenting. In the psychologist's opinion, petitioner suffered from dependent personality disorder; thus, petitioner was likely to participate in all therapy without making any actual change. Petitioner told the psychologist that she suffered a head injury prior to the examination. The psychologist did not notice any cognitive delay or defect during testing and noted such in his report. The circuit court then continued the case to hear further evidence.

At the continued hearing on petitioner's motion for a post-adjudicatory improvement period, she testified that she believed D.J.'s disclosure of sexual abuse, although she admitted that she never called Child Protective Services ("CPS") or the police in reference to the matter. She claimed she did not know what D.J. meant when D.J. said she had been touched inappropriately. Petitioner stated that she did not have a chance to talk to D.J. before D.J. disclosed the abuse at school. After the first CPS intervention, petitioner obtained a domestic violence protective order against the stepfather. However, she voluntarily dismissed this order six days later. Additionally, petitioner testified that, after the stepfather returned to the house, she "felt like a spy" and never left the stepfather and D.J. alone in a room together. Petitioner also testified that the stepfather would discipline the children with a belt and, although she did not believe they deserved it, she felt powerless to stop him. Following petitioner's testimony, the circuit court denied the motion for a post-adjudicatory improvement period.

In June of 2017, the circuit court held a dispositional hearing and petitioner moved for a post-dispositional improvement period. The guardian reported that D.J. did not want to return to petitioner's custody. Additionally, in contrast to the DHHR's expert witness, petitioner's psychological expert testified as to the possible effects that a concussion would have on a client during psychological testing. Further, the psychologist testified that petitioner's action, seeking help and treatment, was inconsistent with dependent personality disorder. However, petitioner's expert noted that this was the first parental fitness evaluation she had ever conducted and that her information was limited to that provided by petitioner and her counsel. The expert also admitted that her evaluation did not include the CPS investigators as collateral witnesses. Ultimately, the circuit court denied petitioner's motion for a post-dispositional improvement period. In its decision, the circuit court relied on the credibility and consistency of D.J.'s allegations, petitioner's lack of action after D.J.'s initial disclosure, and that petitioner allowed the alleged abuser to have contact with D.J. just days after the disclosure. Further, the circuit court gave weight to the DHHR's expert witness's opinion that petitioner's pattern of behavior indicated she would appear to make change without actually internalizing any change. The circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination was in the children's best interests. Ultimately, the circuit court terminated petitioner's parental rights in its July 6, 2017, order.[2] In the same order, the circuit court granted post-termination visitation at the discretion of the foster parents and the children.

Shortly after disposition, the guardian filed a motion to revoke the post-termination visitation. The motion alleged that after the visitation was granted, petitioner and her family began calling the foster parents and demanding visitation with the children, which the foster parents refused. The motion also alleged the foster parents had concerns petitioner and her family would abscond to Texas with the children. The circuit court, upon receipt of the motion, revoked the visitation and ordered that petitioner and her family have no contact with the children. It is from the June 6, 2017, dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply

_____

[2]In addition to the termination of petitioner's parental rights, the children's respective fathers are either deceased or have had their parental rights terminated. According to the DHHR and the guardian, the children are currently placed in separate foster homes with sibling visitation. The permanency plan is adoption in their respective foster homes.

3

because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in denying her an improvement period. According to petitioner, she was entitled to an improvement period because she participated in all court-ordered services and was not previously granted an improvement period. She also argues that she was entitled to an improvement period because counsel for the DHHR agreed she met her burden of proof to obtain the same. The Court, however, finds no error in the circuit court's denial of her motions for an improvement period.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (holding that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'" *In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004). Also, "[f]ailure to acknowledge the existence of the problem, i.e. the truth of the basic allegation pertaining to the alleged abuse and neglect . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *Id* at 217, at 640. Further, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.,* 212 W.Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Contrary to petitioner's argument, participation in services alone did not entitle her to an improvement period. "[E]ntitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'" *Charity H.*, at 215, 559 S.E.2d at 638. Here petitioner showed she could not meet this standard. The DHHR's expert witness opined that petitioner's dependent personality disorder was evidenced by her assenting nature and, while petitioner would likely participate in all services, she would not internalize what she was taught. Rather, in the expert's opinion, petitioner would assent to whatever conditions she found herself facing, regardless of the effect on her children. Accordingly, we find that the circuit court did not abuse its discretion in finding that the improvement period would have no positive long-term effect on petitioner's parenting and in denying the same.

In her second assignment of error, petitioner argues that the circuit court erred in terminating her parental rights when there was a less-restrictive alternative available, specifically the granting of an improvement period. As part of this argument, petitioner asserts that she is a "battered parent" within the meaning of West Virginia Code § 49-1-201. We disagree.

4

West Virginia Code § 49-1-201 defines a "battered parent" as "a respondent parent, guardian, or other custodian who has been adjudicated by the court to have not condoned the abuse or neglect and has not been able to stop the abuse or neglect of the child or children due to being the victim of domestic violence . . . which was perpetrated by the same person or persons determined to have abused or neglected the child or children." Despite petitioner's argument, petitioner never asserted that she was subjected to physical abuse by the stepfather children. Instead, petitioner argues that a prior marriage ended in domestic abuse, but she never asserts that the stepfather ever physically abused her. Therefore, the circuit court did not err in not considering her to be a battered parent under West Virginia Code § 49-1-201.

Conversely, West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that these conditions exist when "the abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child . . . ."

The record is clear that petitioner failed to report D.J's initial allegations. Further, petitioner took no action to remedy the alleged actions causing D.J. emotional injury. Petitioner asserts she "camped out" in front of D.J.'s room the night of the allegations, but later had the stepfather take D.J. to school, which contradicts her assertions that she protected the child. When D.J. made allegations to school staff, petitioner pressured her to recant, causing further injury. Petitioner also filed for a domestic violence protective order against the stepfather after the first CPS intervention, only to voluntarily dismiss it days later. Additionally, petitioner did not realize these parenting mistakes until months into the proceedings when she was confronted with testimony on the effect of her actions. On this record, we find no abuse of discretion and, therefore, no error in the circuit court's decision to terminate petitioner's parental rights.

Petitioner's third assignment of error is that the circuit court gave more weight to the DHHR's expert witness than to her expert witness. Petitioner argues that her expert's report used more collateral sources and weighed in favor of petitioner. We disagree.

In an abuse and neglect case, the circuit court is the trier of fact and shall be permitted to make findings of fact and conclusions of law based on the evidence presented. *Tiffany Marie S*, 196 W.Va. at 225, 470 S.E.2d at 179, Syl. Pt. 1. "The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). These findings shall not be overruled by a reviewing court unless they are found to be clearly erroneous. *Id*.

Based on a review of the record on appeal, we find no error in the circuit court's weighing of the evidence presented. Petitioner provided her expert with only those collateral contacts who were favorable to her. Similarly, petitioner's expert did not receive information that was damaging to petitioner, such as DHHR reports or interviews with DHHR investigators.

5

Further, petitioner's expert had never before performed a parental fitness evaluation. Additionally, petitioner had the benefit of knowing how to respond to the second evaluation after taking the first. In contrast, DHHR's expert had a broader basis of knowledge from which to draw conclusions, more experience with the evaluation process in general, and an opportunity to review petitioner's first responses to the questions. As the trier of fact, the circuit court was permitted to weigh these two experts and choose which, if any, to rely upon. *Tiffany Marie S*, 196 W.Va. at 225, 470 S.E.2d at 179, Syl. Pt. 1. Thus, we find no error in its determination.

Petitioner's fourth assignment of error is that the circuit court erred in finding that the DHHR provided clear and convincing evidence in support of the termination of her parental rights. In support, petitioner argues that the DHHR admitted petitioner met her burden to obtain an improvement period and, thus, could not have provided sufficient evidence in support of opposite outcomes. We disagree.

As addressed above, petitioner was not entitled to an improvement period. Further, although counsel for the DHHR commented that petitioner met her burden, the discretion in granting or denying an improvement period lies with the circuit court. *M.M.*, 236 W.Va. at 115, 778 S.E.2d at 345. The circuit court listed its findings in the dispositional order, which included D.J.'s consistent, credible disclosures of sexual abuse; a diagnosis of petitioner's dependent personality disorder and a prognosis to expect little internalized change in petitioner; and a failure to acknowledge the issues from April 2016 until October 2016. Ultimately, the circuit court was presented with evidence that petitioner did not recognize her parenting mistakes and with an expert opinion that petitioner was not likely to change; therefore we find the circuit court did not err in finding that the DHHR provided clear and convincing evidence in support of termination of her parental rights.

Petitioner's final assignment of error is that the circuit court erred in revoking post-termination visitation. Petitioner argues that visitation should not have been revoked based on the limited evidence presented. We do not agree.

> When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.

Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

The circuit court initially decided that post-termination visitation at the foster parents' discretion would be in the best interest of the children. However, petitioner and her family immediately began calling the foster parents and demanding visitation with the children. The foster parents exercised caution, did not agree with the immediate request, and were then harassed. By ignoring the foster parents' discretion, petitioner and her family violated the circuit court's order. Considering that violation and the stress that continued harassment could cause,

the circuit court revoked the visitation. Accordingly, we do not find that the circuit court abused its discretion in light of the record.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 6, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 23, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

7