# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: S.A.**

**No. 13-0353** (Kanawha County 11-JA-177)

**FILED**

October 1, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

Petitioner Father filed this appeal, by counsel Rebecca Johnson, from a March 13, 2013 order of the Circuit Court of Kanawha County that terminated his parental rights to his child. The guardian ad litem for the child, Sandra Bullman, filed a response supporting the circuit court's order. The Department of Health and Human Resources ("DHHR"), by its attorney Michael Jackson, filed a summary response in support of the circuit court order. On appeal, Petitioner Father argues that the circuit court erred in adjudicating his child as abused and neglected, in terminating his parental rights, and in not granting him a post-adjudicatory improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2011, the DHHR filed its petition for abuse and neglect and temporary emergency custody of the child. The petition alleged that there was ongoing domestic violence in the home between Petitioner Father and the mother and illegal drug abuse by the mother. The petition also alleged that the child was born with marijuana, benzodiazepine, and Lortab in her system. Finally, the petition alleged that Petitioner Father had at times failed to provide the child with the necessary food, clothing, supervision, and housing. The circuit court temporarily removed the child from the home, scheduled a preliminary hearing, and ordered the DHHR to initiate any services by order entered on September 27, 2011.

Petitioner Father waived his right to a preliminary hearing in exchange for services. Petitioner Father was adjudicated as an abusing parent for exposing the child to domestic violence. The circuit court found that the child was neglected due to Petitioner Father's refusal, failure, or inability to supply the child with the necessary food, clothing, shelter, supervision, medical care, or education. Additionally, the circuit court found that the child was abused by Petitioner Father because petitioner knowingly or intentionally attempted to inflict or knowingly allowed another person to inflict physical injury, mental injury, or emotional injury upon the child. By order entered on March 13, 2013, the circuit court terminated Petitioner Father's parental rights. In terminating Petitioner Father's parental rights, the circuit court found that there

1

was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected because Petitioner Father failed to make any efforts to correct the problems that led to the filing of the petition and failed to follow through with a reasonable family case plan.

Petitioner Father raises three assignments of error. First, Petitioner Father argues that the circuit court erred in adjudicating his child as abused and neglected because the State failed to meet its burden of proof. Second, Petitioner Father argues that the circuit court erred in not granting him a post-adjudicatory improvement period because the services that he was receiving were not part of a formal improvement period and the State failed to prepare a family case plan. Finally, he argues that the circuit court erred in terminating his parental rights to his child because there was not sufficient evidence to support the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

First, we address Petitioner Father's contention that the circuit court erred in adjudicating that he was an abusing parent and that his child was abused and neglected. West Virginia Code § 49-6-2(c), in pertinent part, states that, "[a]t the conclusion of the hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . [P]roven by clear and convincing proof." DHHR worker Natalie Blevins testified that the mother admitted that Petitioner Father consistently lost control, hit her, and choked her. Furthermore, prior to the birth of S.A. the maternal grandmother successfully petitioned the Family Court for guardianship of the other children in the home based upon drug abuse and domestic violence.[1] Based upon the evidence in the record, we find no error by the circuit court at adjudication.

---

[1]The mother had two other children who are not the biological children of petitioner and are not subject to this appeal.

We turn to Petitioner Father's contention that the circuit court erred in not granting him a post-adjudicatory improvement period and failed to prepare a family case plan. In order to receive an improvement period, a parent must show that he "is likely to fully participate in the improvement period . . . ." West Virginia Code § 49-6-12(b)(2). Throughout the case Petitioner Father showed that he could not meet his burden to justify an improvement period. Petitioner Father waived his right to a preliminary hearing in exchange for services that were implemented after the filing of the petition in September of 2011. During the adjudicatory hearing, DHHR case worker Timmica Tolliver testified that Petitioner Father was offered parenting education, adult life skills classes, counseling, random drug screens, a psychological evaluation, and supervised vitiation. Ms. Tolliver also testified that Petitioner Father refused to cooperate with multiple service providers, failed drug screens, threatened to cut out his case manager's voice box, threatened to shoot the maternal grandmother in the head, and threatened that he knew where the foster parents lived and that he could go there at any time and it would be a shame if something happened to them. For these reasons, the circuit court did not err in denying Petitioner Father a post-adjudicatory improvement period.

Likewise, the Court finds no merit in Petitioner Father's argument that the circuit court failed to prepare a family case plan.[2] Ms. Tolliver testified that a plan was developed under which Petitioner Father would receive a psychological evaluation, parenting education, adult life skills classes, domestic violence classes, and supervised visitation. According to Ms. Tolliver, Petitioner Father was presented with the plan at several multidisciplinary team meetings, and the requirements were explained to him on separate occasions by multiple service providers. Petitioner Father himself orally moved for services in exchange for waiving his preliminary hearing, and the family case plan was filed on October 2, 2012. However, Petitioner Father was noncompliant; his own testimony reflects that he attended only one life skills and one parenting class, and that he tested positive for marijuana. We reject Petitioner Father's argument that no family case plan was filed. It is uncontroverted that a plan was developed and filed with the circuit court.

As to Petitioner Father's final assignment of error, the Court finds that the circuit court was presented with sufficient evidence upon which to base its findings that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination was necessary for the children's welfare. West Virginia Code § 49-6-5(b)(3) states that a circumstance in which there is no reasonable likelihood that the

---

[2]While a family case plan was filed with the circuit court, it was not signed by any of the parties. For the reasons set forth in the body of this decision, the lack of signatures does not, under the limited circumstances of this case, create a reversible defect. "'The purpose of the family case plan . . . is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems.' Syl. Pt. 5, in part, *State ex rel. W.Va. Dep't. Of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987)." Syl. Pt. 3, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001). The plan was adequately conveyed to Petitioner Father and was designed to serve its intended purpose.

conditions of abuse and neglect can be substantially corrected includes situations where "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child." For the same reasons explained above, we find no substantial likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Petitioner Father threatened to cut out his case manager's voice box and threatened to shoot the maternal grandmother in the head. Petitioner Father began receiving services in September of 2011, but the testimony of a DHHR worker established that Petitioner Father failed to fully participate in the family case plan. Specifically, Petitioner Father sporadically met with parenting advisers, did not submit to or failed random drug screens, did not attend domestic violence counseling or individual counsel, and failed to receive a substance abuse evaluation. Petitioner Father also testified that he only attended one life skills and parenting class and tested positive for marijuana. Pursuant to West Virginia Code § 49-65(a)(6), circuit courts are directed to terminate parental rights upon these findings.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED**: October 1, 2013

**CONCURRED IN BY**:

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

4