# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: C.S.**

**No. 14-0013** (Randolph County 13-JA-13)

**FILED**

June 2, 2014

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

### MEMORANDUM DECISION

Petitioner Mother, by counsel Heather M. Weese, appeals the Circuit Court of Randolph County's December 10, 2013, order terminating her parental rights to the child, C.S. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem, David H. Wilmoth, filed a response on behalf of the child supporting the circuit court's order. On appeal, petitioner alleges that the circuit court erred in finding that her "Intent To Relinquish For Adoption The Unborn Child, [C.S.]" ("Intent to Relinquish") was invalid, in denying her a dispositional improvement period, and in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the current abuse and neglect proceedings, petitioner's parental rights to five older children were involuntarily terminated in three prior abuse and neglect proceedings. In January of 2008, petitioner's parental rights to her three eldest children were terminated after Respondent Father C.P. Sr. severely abused C.P. Jr., who was then approximately ten weeks old.[1] The father's abuse resulted in skull and rib fractures, and such severe head trauma that C.P. Jr. required a partial lobotomy and multiple blood transfusions. As a result, the child, now six years old, remains significantly developmentally delayed. According to the circuit court, the father was criminally indicted for malicious assault and child abuse resulting in serious bodily injury in regard to this abuse; he later pled guilty to the lesser charge of child abuse resulting in bodily injury and was sentenced to a term of incarceration of one to ten years. The father was released after two and a half years of incarceration.

---

[1]Petitioner appealed this termination, and the Court refused the same by order entered on November 5, 2008, in case number 081525.

1

In September of 2009, petitioner's parental rights to a fourth child were terminated after the DHHR filed an abuse and neglect petition alleging aggravated circumstances.[2] In December of 2011, petitioner's parental rights to a fifth child were terminated after the DHHR again filed an abuse and neglect petition alleging aggravated circumstances.[3]

On March 22, 2013, petitioner gave birth to her sixth child, C.S. Approximately one month prior, petitioner married C.P. Sr., C.S.'s father and the perpetrator of the significant abuse to their other child, C.P. Jr. Prior to C.S.'s birth, both petitioner and the father signed the Intent to Relinquish to demonstrate their intent to allow C.S. to leave the hospital in the custody of petitioner's parents and later be adopted by them. However, the DHHR intervened and obtained emergency custody shortly after the child left the hospital. Based upon the prior involuntary terminations of parental rights, the DHHR filed an abuse and neglect petition against the parents on March 25, 2013. The maternal grandparents were initially joined as interested parties, but later withdrew their request for custody of the child at a July 2, 2013 hearing.

Petitioner waived her right to a preliminary hearing, and on May 13, 2013, the circuit court held a hearing to determine the validity of the parents' Intent to Relinquish. Because it was not signed at least seventy-two hours after the child's birth, as required by West Virginia Code § 48-22-302, the circuit court found the document invalid. On June 2, 2013, the circuit court held an evidentiary hearing to determine whether petitioner had undergone a substantial change in circumstances since the prior termination of parental rights. Based upon substantial evidence, including petitioner's recent marriage to C.P. Sr., the man who inflicted serious and severe abuse upon one of petitioner's other children, the circuit court declined to find that petitioner made a substantial change in circumstances. Thereafter, the circuit court held a dispositional hearing, at the conclusion of which it terminated petitioner's parental rights to C.S. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if

---

[2]Petitioner appealed this termination, and the Court refused the same by order entered on February 11, 2010, in case number 091864.

[3]Petitioner appealed this termination, and the Court affirmed the same in a memorandum decision. See *In re C.P.*, No. 12-0231 (W.Va. Supreme Court, September 7, 2012) (memorandum decision).

the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's finding that the Intent to Relinquish was invalid or in terminating petitioner's parental rights without a dispositional improvement period.

According to West Virginia Code § 48-22-302, "[n]o consent or relinquishment may be executed before the expiration of seventy-two hours after the birth of the child to be adopted." It is uncontroverted that petitioner and the father executed their Intent to Relinquish prior to the child's birth and failed to execute a proper document following the expiration of the statutorily mandated seventy-two hour period following the child's birth. While petitioner argues that the Intent to Relinquish should have been considered valid because of her express intention to later comply with the necessary post-birth documents, the record is clear that no such documents were ever executed. This is in spite of the fact that petitioner had custody of the child beyond the seventy-two hour period required to execute a valid document consenting to the child's adoption. As such, the circuit court was correct in finding that the invalid document did nothing to protect C.S. because "the [parents] could at any time later reassert parental rights to the child." Accordingly, the circuit court found that the lack of a valid Intent to Relinquish made "[c]ourt intervention . . . absolutely necessary." Because petitioner failed to comply with the requirements of West Virginia Code § 48-22-302, the circuit court was correct in finding the Intent to Relinquish invalid.

Further, the circuit court did not err in denying petitioner's request for a dispositional improvement period. It is true that petitioner made efforts at remedying some of the negative conditions in her home, and the circuit court even acknowledged the same after hearing petitioner's testimony regarding "efforts to further her education, maintain steady employment and seek medical and psychological treatment." However, the circuit court also noted that these were not the issues underlying the prior abuse and neglect proceedings in which petitioner was involved. Instead, as the circuit court stated, "[t]he predominate issue in past cases was [petitioner's] choice to bring violent men into her life." The record is clear that petitioner has failed to remedy this condition, as she reconciled with C.P. Sr. upon his release from incarceration for abusing C.P. Jr. In fact, petitioner has had two children with C.P. Sr. since the initial abuse and neglect proceeding, and petitioner married him approximately one month prior to C.S.'s birth.

Pursuant to West Virginia Code § 49-6-12(c)(2), a circuit court has discretion to grant a dispositional improvement period if the parent "demonstrates, by clear and convincing evidence, that [he or she] is likely to fully participate in the improvement period . . . ." The record here is clear that petitioner could not satisfy this burden. Despite her involvement in at least three abuse and neglect proceedings based upon her continued association with inappropriate individuals, petitioner chose to marry the man who severely injured their infant son. As such, it is clear that petitioner could not demonstrate that she would fully participate in an improvement period, as evidenced by her continued association with the perpetrator of past abuse.

Further, this evidence supports the circuit court's termination of petitioner's parental rights. Pursuant to West Virginia Code § 49-6-5(b)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future includes one in which "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child . . . ." As noted above, petitioner's continued association with and marriage to C.P. Sr. resulted in a significant danger to the child. While petitioner testified that she would do anything necessary to protect the child from the father, including obtaining a divorce, the fact that she continues to associate with him after at least three prior abuse and neglect proceedings concerning these very same circumstances illustrates that she was unwilling to comply with rehabilitative efforts designed to protect the child. The evidence supports the circuit court's findings that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse or neglect in the near future and that termination was necessary for the child's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon these findings.

For the foregoing reasons, we find no error in the decision of the circuit court and its December 10, 2013, order is hereby affirmed.

Affirmed.

**ISSUED**: June 2, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II