# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**In Re: J.P., K.P., & S.M.**

**No. 14-0668** (Mingo County 14-JA-20, 14-JA-21, & 14-JA-22)

**FILED**

November 24, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Stacey Kohari, guardian ad litem ("guardian") for the children J.P.,[1] K.P.,[2] and S.M.,[3] appeals the Circuit Court of Mingo County's June 11, 2014, adjudicatory order. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the guardian's petition for appeal alleging error by the circuit court. Respondent Mother filed a response, by counsel Robert Carlton, supporting the circuit court's ruling below.[4] The guardian filed a reply. On appeal, the guardian argues that the circuit court erred in failing to find that Respondent Mother and Respondent Father[5] were abusing parents.[6]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the circuit court erred in failing to adjudicate the mother and the father as abusive parents. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Revised Rules of Appellate Procedure and is therefore appropriate for a memorandum decision reversing the circuit court rather than an opinion.

In January of 2014, Child Protective Services ("CPS") received a referral alleging that the Respondent Parents abused S.M. as a result of S.M. witnessing Respondent Parents sexually abuse several minor children identified as K.H. and M.H., thirteen-year-old twin sisters who were students where Respondent Mother taught and coached soccer. The referral further alleged that Respondent Parents provided their own children with alcohol and cigarettes and used excessive corporal punishment. CPS assessed the family and substantiated conditions of neglect

---

[1] J.P. was approximately two years old when the petition for abuse and neglect was filed.

[2] K.P. was approximately nine years old when the petition for abuse and neglect was filed.

[3] S.M. was approximately twelve years old when the petition for abuse and neglect was filed.

[5] Respondent Father did not file a response.

[6] Respondent Father is S.M.'s stepfather and J.P. and K.P.'s biological father.

due to dangerous living conditions, the parents' failure to provide appropriate supervision, emotional abuse, and exposure of the children to their sexual abuse of minors.

Over the next month, CPS interviewed numerous individuals regarding the referral. On January 29, 2014, a CPS worker interviewed S.M.'s stepmother, who reported that S.M. told her that Respondent Mother kissed M.H.[7] and that Respondent Father found love notes from M.H. to Respondent Mother. On the same day, CPS also interviewed S.M., who reported that she saw Respondent Mother kiss M.H. on the lips; that the water in the home was shut-off; that she observed her parents and the girl "snort white stuff up their nose;" and that her parents allowed S.M.'s younger sister, K.P., to drink alcohol.

The next day, CPS interviewed Respondent Mother, who stated that she believed that S.M. made the accusations in retaliation for divorcing S.M.'s father. CPS also interviewed K.P., who reported that her parents "slept with" M.H. and K.H., the students at the school where Respondent Mother taught.[8] K.P. further stated that they "hardly had any food in the house."

On February 24, 2014, CPS interviewed the Pike County, Kentucky, Coroner, who stated that his granddaughter witnessed Respondent Parents use drugs and that they left the children in the car while they worked at their respective places of employment.[9] CPS also interviewed another witness who reported that her daughter saw Respondent Parents give children cigarettes and that they left their own children in the car while they worked.[10] Finally, CPS spoke with Respondent Father's ex-wife, who stated that he abused prescription pain pills.

On February 25, 2014, a CPS worker interviewed K.H., one of the students with whom the father was allegedly having an inappropriate relationship. *See* n.8 supra. K.H. reported that she saw her sister and Respondent Mother kiss; that Respondent Mother forced her to kiss Respondent Father; that they drove with Respondent Parents to Kentucky, to get "pills;" that she witnessed Respondent Parents and M.H. snort pills; that there was no food in the home; and that the family did not have running water for approximately two months. A CPS worker also interviewed M.H., K.H.'s sister, who admitted that she had sexual relations with Respondent Mother; that she went to Kentucky with Respondent Parents and their children to get pain pills; and that they snorted them while Respondent Parents' children were in the car. M.H. also stated

---

[7]Respondent Mother was ultimately accused of having a sexual relationship with M.H. Respondent Mother was charged with one count of sexual abuse by a parent, guardian, or custodian as a result of these allegations. She pled guilty to one count of third degree sexual assault on September 16, 2014, and is required to register as a sex offender. She is awaiting sentencing.

[8]It is also alleged that Respondent Father had an inappropriate relationship with K.H.

[9]On February 18, 2014, CPS interviewed Respondent Father's uncle and mother. Both reported that they were not aware of any substance abuse issues or unsatisfactory living conditions in the home.

[10]This witness was identified as S.V. She has a daughter with the father.

that Respondent Parents' home was filled with trash and dirty clothes, and that they did not have any running water or food. M.H. reported that she snuck the children food because Respondent Parents spent all of their money on drugs.

Two days later, a CPS worker interviewed Respondent Father's other daughter, A.R., (who is not the subject of these proceedings) who reported that she brought the children food during her scheduled visits with Respondent Father. According to A.R., Respondent Parents "got pills from Aunt Peg, Aunt Daryl, and [B.P.];" that she was forced to be a "lookout" while Respondent Parents tried to steal pills and money from Aunt Peg; that Respondent Father has "always had a drug problem;" that she witnessed him snort pills in the past; that Respondent Parents let K.P. smoke; and that the home was filthy. Finally, an adult male, R.S., reported to the DHHR that Respondent Mother got him drunk and had sexual intercourse with him when he was fourteen-years-old.[11]

On March 19, 2014, the DHHR filed an abuse and neglect petition against Respondent Parents based upon the above-mentioned referral and subsequent CPS investigation. The parents waived their preliminary hearing and the custody of J.P. and K.P. was transferred to the DHHR. S.M. was placed with her biological father. The circuit court held an adjudicatory hearing in June of 2014, during which the circuit court heard testimony from S.M., M.H., K.H., and a CPS worker. After hearing the testimony, the circuit court found that the DHHR failed to meet its burden to establish that Respondent Parents were abusive. As such, the circuit court dismissed them from the petition and directed the DHHR to return the children to Respondent Parents.[12] The children's guardian appeals the circuit court's order to this Court.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record

---

[11]R.S. believes that he is K.P.'s biological father. The record on appeal is unclear if he has been determined to be K.P.'s father.

[12]By Order entered on June 13, 2014, the circuit court granted the DHHR and GAL a thirty-day extension staying the transfer of the custody of the children to Respondent Parents. By order entered on July 17, 2014, the circuit court extended the stay for another sixty days. The circuit court further extended the stay by an additional sixty days by order entered on September 12, 2014.

3

viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds that the circuit court clearly erred in finding that the DHHR failed to prove by clear and convincing evidence that the parents abused and/or neglected their children.[13]

West Virginia Code § 49-1-3(1)(A) defines an "abused child" as one "whose health or welfare is harmed or threatened by [a] parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." Additionally, West Virginia Code § 49-1-3(11)(A)(i) defines a "neglected child" as one

> [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when such refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian . . . .

The record clearly shows that Respondent Parents' conduct constituted abuse and neglect. M.H. testified that she brought the children food and that her parents fed the children because Respondent Parents did not feed them or keep food in their home. Importantly, M.H. testified that she traveled to Kentucky with Respondent Parents and their children where Respondent Father purchased pills; and that she "snorted the pills" in the car with Respondent Parents in front of the children. Finally, M.H. testified that she "romantically kissed" Respondent Mother in front of her children and witnessed Respondent Father kiss other girls her age in front of his children. M.H.'s testimony was consistent with that of her sister K.H., who also testified that the home was very dirty; that she and M.H. drank alcohol with Respondent Parents; and on one

---

[13]The circuit court's written order dismissing Respondent Parents states that "the [circuit] [c]ourt does not find that the [DHHR] proved by clear and convincing evidence that the Respondents abused and/or neglected the subject-children." However, a review of the adjudicatory transcript reveals that the circuit court stated that

> [a]s far as the kissing, which is the only possible sexual abuse and it sounded like a truth or dare situation, inappropriate, probably; sexual abuse, no; neglect – was it done if it was a peck on you kiss and a dare type situation, this [c]ourt is of the opinion that is not sexual abuse witnessed by children nor neglect. In most instances I would often say at this point that the testimony may be sufficient in an abuse and neglect but not in a criminal case. Here, it's just the opposite. There may be more matters along in a criminal case than abuse and neglect, but I find no evidence sufficient to meet the standard of clear and convincing that there's been abuse and neglect in this case and I am going to order the case dismissed.

4

occasion witnessed J.P., who was under the age of two, drink a beer that Respondent Parents left unattended.

Based upon the evidence, the conduct of Respondent Parents constitutes, at a minimum, abuse of the children given their inappropriate intimate relationships with minors. The evidence further reveals that Respondent Parents traveled across states lines with their own children and other minor children to purchase drugs, and snorted drugs with a minor child and in the presence of their children. Therefore, the circuit court clearly erred in failing to adjudicate them as abusing parents.

For the foregoing reasons, we reverse and remand this matter to the circuit court for the entry of an adjudicatory order, forthwith, finding Respondent Parents to be abusing parents, and for further proceedings, including a properly noticed dispositional hearing, consistent with the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and West Virginia Code § 49-6-1 to § 49-6-12. Further, the Court directs that the DHHR shall retain legal custody of J.P. and K.P., and shall remain in their current physical custody as previously ordered by the circuit court. The Court directs that S.M. remain in the custody of her biological father as previously ordered by the circuit court.

Reversed and Remanded, with directions.

**ISSUED**: November 24, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II