# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **D.S. Jr.,**

**No. 15-0321** (Monongalia County 11-JA-63)

**FILED**

November 23, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father D.S. Sr., by counsel Edmund J. Rollo, appeals the Circuit Court of Monongalia County's February 17, 2015, order terminating his parental rights to six-year-old D.S. Jr. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Scott A. Shough, filed a response on behalf of the children in support of the circuit court's order. The foster parent intervenors, by counsel Natalie J. Sal, also filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in modifying the dispositional order to terminate his parental rights.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2011, the DHHR filed an abuse and neglect petition against petitioner based on allegations that he and his then-wife, who is not D.S. Jr.'s biological mother, exercised extreme "discipline" on D.S. Jr. and two other children in the home and failed to maintain a suitable home.[2] The DHHR claimed that D.S. Jr. was seen with severe bruising on his legs, back, and buttocks reportedly caused by petitioner and his then-wife hitting him with "a big paddle." Another child in the home also reported that petitioner wore steel-toed boots and used them to kick D.S. Jr. These types of beatings were said to occur "all the time." The DHHR further alleged that a Child Protective Services ("CPS") worker noted the smell of urine, a wet carpet,

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

[2]The two other children in petitioner's home are not his biological children and are not at issue in this appeal.

1

and a lack of proper bedding in one of the children's rooms. According to the CPS worker, D.S. Jr. was said to urinate on the carpet. In January of 2012, at the adjudicatory hearing, petitioner stipulated to the allegations as relayed in the petition. Based on the petition, D.S. Jr. was removed from petitioner's home. The following month, in February of 2012, the circuit court granted petitioner's motion for a post-adjudicatory improvement period. At review hearings held in July and October of 2012, the circuit court found that petitioner had made progress on his improvement period and granted him extensions thereof.[3]

In March of 2013, the circuit court held its first dispositional hearing. At that hearing, the circuit court found that petitioner had successfully completed the terms and conditions of his improvement period and granted him custody of D.S. Jr. However, the circuit court found that D.S. Jr. required a slow transition back into petitioner's home. The circuit court ordered reunification to occur "at a pace to be determined by the [multidisciplinary team] and by [D.S. Jr.'s] reaction to the situation and by [petitioner and his then-wife's] reaction to the situation of more contact of an extended nature and how well things are going."

In May of 2013, the circuit court held a review hearing on the gradual transition of D.S. Jr. back into petitioner's home. The DHHR argued that petitioner allowed D.S. Jr. to develop a severe diaper rash during an extended visit and that petitioner failed to provide D.S. Jr. with sufficient supervision. Petitioner denied the allegations. At the conclusion of the hearing, the circuit court extended the reunification process.

In September of 2013, at a subsequent review hearing on D.S. Jr's transition, the circuit court granted the foster parents' motion to intervene. Later that month, the guardian filed a motion to modify the dispositional order citing allegations of petitioner's relapsed issues with housing conditions, excessive punishment, and lack of proper supervision. The DHHR and foster parent intervenors joined that motion.

Between September of 2013 and March of 2014, the circuit court heard substantial evidence of the current state of petitioner's home and conduct. During that time, the circuit court held at least three hearings on the joint motion to modify the dispositional order. In March of 2014, the circuit court ordered that it would take the motion to modify under advisement but it further ordered that the DHHR was to continue its efforts to reunify petitioner and D.S. Jr. until further order of the court.

In June of 2014, the circuit court held another hearing to review D.S. Jr.'s transition back into petitioner's home. The DHHR argued that D.S. Jr. was witnessed with a bruise in the shape of a handprint and that another young child in the home was found outside at night without supervision. According to the DHHR, Pennsylvania officials were investigating the incidents. Moreover, the DHHR reported animal feces and urine on the floors of the home. However, contrary to the DHHR's claims, the CASA's report presented at that hearing indicated that the

---

[3]At some time during the proceedings below, petitioner and his then-wife moved to the Commonwealth of Pennsylvania. It is unclear from the record on appeal when this move occurred.

reunification process was going well.[4] Given the circumstances of the case presented at that hearing, the circuit court did not modify its previous order at that time and set the matter for review in ninety days.

In October of 2014, the circuit court held an evidentiary hearing on the joint motion to modify the dispositional order. D.S. Jr.'s therapist testified that the child's best interests were served by permanent placement with the foster parents. The therapist also claimed that D.S. Jr. disclosed that petitioner physically restrained him and was aggressive toward him. CPS worker, Amber Adkins, testified that petitioner's then-wife had been charged criminally for child neglect and endangerment in connection with the report that one of her young children was found outside late at night without supervision. Ms. Adkins further testified that another child in the home had to be taken to the emergency room after ingesting Klonopin, a prescription medication, and Ms. Adkins had personally witnessed unsecured medication bottles in the home prior to that incident. Ms. Adkins explained that she had attempted to reunify D.S. Jr. and petitioner, but she worried about the child's safety concerns in petitioner's home.

At that hearing, petitioner testified to his vast improvements as a parent. He claimed to have resolved his anger issues through services during the proceedings. However, he admitted that he had lost his temper during the proceedings and "struck or slapped" D.S. Jr. for reportedly saying a "bad word[.]" Petitioner argued that D.S. Jr.'s use of that word had caught him by surprise. The circuit court also heard testimony that it was in the child's best interests to continue to have contact with his father. At the conclusion of that evidentiary hearing, the circuit court ordered that the parties submit proposed findings of fact and conclusions of law. By order entered on February 17, 2015, the circuit court granted the joint motion to modify the dispositional order to terminate petitioner's parental rights to D.S. Jr. In that order, the circuit court found that reunification efforts had failed; that there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected in the near future; and that the child's best interests required termination. However, the circuit court granted petitioner frequent and liberal post-termination visitation with D.S. Jr. to be determined by the adoptive parents. This appeal followed.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

---

[4]Rule 52 of the Rules of Procedure for Child Abuse and Neglect Proceedings provides for court-appointed special advocate ("CASA") representatives. The CASA's primary role is "to further the best interests of the child until further order of the court or until permanent placement of the child is achieved." W.Va. R. P. Child Abuse and Neglect Proc. 52(a).

committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner's sole assignment of error is that the circuit court erred in modifying the dispositional order to terminate his parental rights. While petitioner argues that a circuit court may only terminate parental rights based on conduct in the underlying petition and subject to adjudication, and no new or amended petitions were filed here, he ignores the circuit court's jurisdiction and authority to modify a dispositional order under certain circumstances. Pursuant to West Virginia Code § 49-6-6, circuit courts may modify a dispositional order "if the [circuit] court finds by clear and convincing evidence a material change of circumstances and that such modification is in the child's best interest." *See also* W.Va. R. P. Child Abuse and Neglect Proc. 46 (providing that certain parties may file motion to modify dispositional order and that "[t]he [circuit] court shall conduct a hearing and, upon a showing of a material change of circumstances, may modify . . . the order if, by clear and convincing evidence, it is in the best interest of the child"); W.Va. R. P. Child Abuse and Neglect Proc. 6 (providing that "[t]he [circuit] court retains exclusive jurisdiction over placement of the child while the case is pending, as well as over any subsequent requests for modification, including, but not limited to, changes in permanent placement or visitation . . . .").

In the instant case, the circuit court found that, during the reunification process, petitioner relapsed into physically abusive behavior and failed to provide a suitable home for D.S. Jr. As relayed by the DHHR, other children in the home were taken to the hospital for digesting prescription medication and found outside at night without supervision, resulting in criminal charges of child neglect and endangerment against the person with whom petitioner resided. Petitioner admitted to an incident in which he "struck or slapped" the child. Moreover, evidence demonstrated that animal feces and urine were reported on the floors of the home after the dispositional order, and, according to D.S. Jr.'s therapist, petitioner continued to physically restrain the child and was aggressive toward him. Despite the circuit court's continued efforts to achieve reunification in this matter, it ultimately found that the conditions had changed since the time of its dispositional order, and the child's best interests required modification of that order. The circuit court concluded that there was no reasonable likelihood that the conditions of abuse or neglect, which were the same issues persistent throughout the underlying proceedings, could be substantially corrected in the near future, and the child's best interests required termination. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon such findings. Given the unique circumstances of this case, we find no merit to this assignment of error.

For the foregoing reasons, we affirm the circuit court's February 17, 2015, order.

Affirmed.

**ISSUED**: November 23, 2015


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II