# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **G.P.**

**No. 17-0600** (Randolph County 15-JA-45)

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother L.P., by counsel Gregory Michael, appeals the Circuit Court of Randolph County's June 1, 2017, order terminating her parental rights to G.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary S. Nelson, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in taking judicial notice that the drug Neurontin, otherwise known as gabapentin, was not routinely screened for in drug screens taken given by the DHHR.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2015, the child, G.P., was born with fetal drug withdrawal symptoms from exposure to benzodiazepine, amphetamine, and Neurontin, otherwise known as gabapentin. The child was transferred to West Virginia University Children's Hospital for treatment. On August 20, 2015, the child was released to petitioner's care under a safety plan imposed by the DHHR which required that petitioner and the child live with petitioner's parents, who would monitor petitioner and her care of the child. On August 30, 2015, petitioner violated the safety plan when she and the child moved out of the parent's home. In September of 2015, the DHHR filed an

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner did not assert any assignment of error regarding termination. As such, we will not address the circuit court's termination of petitioner's parental rights in this memorandum decision.

abuse and neglect petition against petitioner alleging that the child suffered at birth from fetal drug withdrawal symptoms caused by exposure to benzodiazepine, amphetamine, and Neurontin.

In January of 2016, the circuit court held an adjudicatory hearing at which petitioner stipulated to her drug abuse. Petitioner was adjudicated as an abusing parent and granted a post-adjudicatory improvement period.

In May of 2017, the circuit court held a dispositional hearing. At the hearing, a DHHR case worker testified that petitioner and the child's father, J.B., engaged in a domestic violence incident. The incident occurred while petitioner, who was exercising unsupervised visitation with the child, permitted the father to visit in violation of the terms and conditions of her improvement period. The case worker also testified that the father had previously voluntarily relinquished his parental rights to the child and was a known drug abuser. The caseworker further testified that she conducted a visit at petitioner's home and petitioner appeared to be under the influence of drugs, despite producing several negative drug screens. According to the caseworker, petitioner had trouble maintaining conversation, gave fictitious accounts of past events, and lied about having contact with the child's father. Petitioner's brother testified that he found a needle, spoon, and drug paraphernalia at their parents' home and believed that the items belonged to petitioner. He also testified that petitioner appeared to be incoherent the day he found the drug paraphernalia and that her behavior was the same as she exhibited when she abused drugs. Finally, a police officer testified that he was present at petitioner's home in response to a domestic violence incident and found a bottle of Neurontin in her possession. The police officer stated that the Neurontin was not prescribed to petitioner and another person's name was on the pill bottle.

Based on the evidence presented, the circuit court found that petitioner lied about having contact with the child's father and noted the father's continued drug abuse. Despite petitioner's negative drug screens, the circuit court specifically found that petitioner's emaciated appearance, impaired behaviors, and continued contact with the child's drug-abusing father was evidence of her continued drug abuse. The circuit court also noted that it did not believe that Neurontin was screened for in the drug screen panel routinely performed by the Barbour County Community Corrections Program. The circuit court also found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future, and noted that she "demonstrated an inadequate capacity to solve the problems of abuse and neglect on her own or with help." On June 1, 2017, the circuit court terminated her parental rights to the child.[3] This appeal followed.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

[3]Petitioner's parental rights to the child were terminated below. The parental rights of the child's biological father, J.B.'s, were also terminated below. According to the guardian, G.P. was placed in a foster home and the permanency plan is adoption into that home.

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in taking judicial notice that the drug Neurontin does not show up in the DHHR's routinely used drug screen panel. In support of her argument, petitioner contends that screening for Neurontin "is not an adjudicative fact generally known within the [circuit court]'s territorial jurisdiction." We disagree. Rule 201 of the West Virginia Rules of Evidence provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: is generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

In the instant case, the circuit court noted that Neurontin was not routinely screened for in the drug screens provided by the Barbour County Community Corrections program ("BCCC"). The circuit court was familiar with the panel of drugs tested by the BCCC, which provided drug screen testing for the DHHR in abuse and neglect proceedings. The circuit court was familiar with the panel of drugs tested as a result of its capacity to hear abuse and neglect proceedings and, thus, the drugs commonly tested were within the purview of the circuit court. Further, the panel of drugs tested by the Barbour County Community Corrections program could be readily determined. Accordingly, we find no error below.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 1, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: November 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker