**STATE OF WEST VIRGINIA**

**FILED**

**October 11, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**In re C.K.**

**No. 23-355 (Mercer County 22-JA-20)**

## MEMORANDUM DECISION

Petitioner Mother T.W.[1] appeals the May 15, 2023, order entered by the Circuit Court of Mercer County, West Virginia, terminating her parental, custodial, and guardianship rights to C.K.[2] The DHS and the children's guardian ad litem filed briefs in support of the circuit court's order. The petitioner argues that the court erred by denying her request for a continuance and proceeding with the dispositional hearing that resulted in termination of her parental rights without her being present.

Upon consideration of the parties' written and oral arguments, the appendix record, and the applicable law, this Court finds no new or significant questions of law have been presented. We further find that the circuit court committed no error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

---

[1] The petitioner appears by counsel Thomas M. Janutolo, Jr. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Andrew T. Waight. Counsel P. Michael Magann appears as the child's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

On February 4, 2022, the DHS filed a petition[3] alleging that the petitioner's child was born at home on February 2, 2022, and suffered from exposure to methamphetamine due to the petitioner's drug use during her pregnancy.[4] The home had no electricity or running water and the petitioner had not received prenatal care. The petitioner also had a prior involuntary termination to another child, C.K.'s sibling, who is not the subject of this appeal. Further, it was alleged that the petitioner had been seen at Princeton Community Hospital, located in Princeton, West Virginia, on the day before the child's birth, after being transported there by law enforcement. The Mercer County Sheriff's Department had responded to the petitioner's home based on a report that she was afraid, there was a small child inside the home screaming, the doors and windows of the home were open, and no adults were in the home.[5] Upon arriving at the home, deputies found all the doors and windows were shut and there was no screaming child present. The deputies located the petitioner down the road from her home, standing on another person's front porch holding a lead pipe and a flashlight. She was described as hallucinating and "talking out of her head." She was arrested and taken to the hospital for medical clearance so that she could be transported to the regional jail; however, after being admitted to the hospital she checked herself out against medical advice.[6] By order entered on February 4, 2022, the circuit court found that the child was in imminent danger due to neglect by substance abuse and prior terminations and granted the DHS custody of the child.

The petitioner did not appear at the preliminary hearing on February 26, 2022, but reported to her attorney that she wanted new counsel. The circuit court denied her request and scheduled the adjudicatory hearing.

At the adjudicatory hearing held on March 28, 2022, the petitioner renewed her request for a new attorney; the circuit court granted the petitioner's request, and the matter was continued so that new counsel could be appointed and thereafter have time to prepare for the adjudicatory hearing. The court rescheduled the adjudicatory hearing for June 21, 2022. On June 21, 2022, the

---

[3] The child was originally identified as baby girl W. The DHS later filed an amended petition changing the baby's name to C.K.

[4] The newborn infant's father was also named in the petition as a respondent and his parental rights were also terminated. He did not file an appeal of that decision.

[5] A deputy clarified these allegations at the adjudicatory hearing when he testified that the petitioner had actually placed the call to law enforcement, reporting that her neighbor had a small child in the neighbor's home, that the child was screaming, and that all the windows in the home were opened. The officer stated that they were doing a wellness check on the petitioner's neighbor, who was elderly and had no children in the home, when they discovered the petitioner.

[6] The deputy also testified at the adjudicatory hearing that once the petitioner was admitted to the hospital she was not processed on the warrant for which she was arrested. *See infra.*

court again continued the hearing until August 15, 2022, at the request of petitioner's counsel, who was newly appointed and thus not prepared for the adjudicatory hearing. However, before continuing the case, the court, without objection, heard testimony from a nurse at the hospital where the child was seen after its birth that the child's umbilical cord tested positive for amphetamine, cocaine, opiates, hydromorphone, benzos, and methamphetamine.

On August 15, 2022, the circuit court resumed the adjudicatory hearing, at which neither the petitioner nor the father were present but both were represented by counsel. A child protective services ("CPS") worker testified that the petitioner had been involved in a prior abuse and neglect case also involving a newborn child based on many of the same issues present in this case, i.e., drug abuse, inadequate housing, and the petitioner's mental health issues. The petitioner's parental rights to that child, C.K.'s sibling, were terminated in 2021.[7] The CPS worker testified that in the instant case there appeared to be no change in "any of the circumstances" which led to the prior termination of parental rights. The court also heard from Lt. William Rose with the Mercer County Sheriff's Department, who testified as to the circumstances surrounding the February 1, 2022, incident involving the petitioner. He described the home as not livable and the petitioner – who as noted above was located on a nearby front porch holding a lead pipe in one hand and a flashlight in the other – as "messed up." The deputy stated that he knew there was an outstanding warrant on the petitioner and they arrested her on that warrant only after she refused to be taken voluntarily to the hospital as she kept saying that she was pregnant.[8] After her arrest, the deputies transported her to the hospital for medical clearance before taking her to jail. The deputy stated that at the hospital it was confirmed that the petitioner was pregnant, she was admitted to the hospital, and they ended up not processing her on the warrant.[9] Finally, the court heard testimony from the petitioner's biological sister. She described instances when the petitioner acted very erratically and hallucinated. She stated that her sister suffered from mental illness.

---

[7] The petitioner appealed the 2021 termination of her parental rights to C.K.'s sibling. On appeal, this Court vacated the circuit court's order and remanded the case for the limited purpose of entering a new dispositional order that complied with Chapter 49 of the West Virginia Code and the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. *See In re R.K.*, No. 21-0748, 2022 WL 1115258, at *2-*4 (W. Va. Apr. 14, 2022) (memorandum decision) (finding that the circuit court failed to make adequate findings of fact and conclusions of law in its dispositional order terminating the mother's parental rights to the child).

[8] The deputy described the petitioner as tiny and stated that he had no idea if she was pregnant.

[9] As previously mentioned, it was alleged in the petition that the petitioner left the hospital against medical advice and the child was born in the petitioner's home the next day.

In its amended order entered on December 7, 2022,[10] the circuit court found that the child was neglected by the petitioner "due to aggravated circumstances of a prior termination of parental rights." The court also found that petitioner had not cooperated in the abuse and neglect proceeding, was not participating in required drug screening, and was not providing any support for the child. The court directed petitioner's counsel to locate his client and "show significant improvements." The court then set a dispositional hearing for November 14, 2022.

The petitioner did not appear at the dispositional hearing. The petitioner's counsel requested a short continuance based on the petitioner's hospitalization in a state mental health facility in Marion, Virginia, for the last few months. The petitioner's counsel represented that the petitioner was "semi-incarcerated there." He informed the court that there was a hearing to be held in Virginia that day to determine what was going to happen with his client, stating that a doctor at the facility where the petitioner was hospitalized had suggested the possibility that the petitioner would be released to enter substance abuse rehabilitation treatment. The court granted the petitioner a continuance.

On December 14, 2022, at the rescheduled dispositional hearing wherein the petitioner was appointed new counsel, counsel requested that a guardian ad litem be appointed for his client in light of the information about her mental health hospitalization. The circuit court agreed to appoint a guardian ad litem and continued the hearing to January 17, 2023.

The petitioner failed to attend the January hearing, and her attorney requested additional time to try and locate his client in order to meet with her. The petitioner's guardian ad litem also requested additional time to meet with the petitioner and to attempt to obtain the petitioner's medical records from her hospitalization in Virginia. The circuit court granted the requested continuance.

The new dispositional hearing was rescheduled to March 2, 2023, and the petitioner was present for this hearing. However, the petitioner's guardian ad litem discovered a conflict which resulted in the appointment of a new guardian ad litem for the petitioner. For this reason, the circuit court granted a continuance and rescheduled the hearing for April 20, 2023. The court also scheduled a multidisciplinary team ("MDT") meeting for March 7, 2023, to discuss visitation between the petitioner and the child. The petitioner did not attend the MDT meeting.

On April 20, 2023, at the rescheduled dispositional hearing, the circuit court announced that the petitioner had contacted his office the day before the hearing and requested to appear at the hearing by phone. The petitioner's counsel informed the court that his client had contacted him also asking whether she could appear at her dispositional hearing by phone, telling counsel

---

[10] The original adjudicatory order was entered on November 3, 2021.

that she was in Abingdon, Virginia, seeking an apartment and employment. The petitioner's counsel told her that he would inquire with the court about her request to appear by phone; subsequently, upon learning that the court did not allow litigants to appear by phone, counsel so advised the petitioner by leaving a voicemail message on her phone and sending her a text message.

There was no request by the petitioner's counsel at this time to continue the case, and the court proceeded with the dispositional hearing. A CPS worker testified that the petitioner had a prior involuntary termination of her parental rights. She further testified that since the adjudicatory hearing in August, 2022, the petitioner had not cooperated or participated in any services offered to her by the DHS; had not visited with her child since before the adjudicatory hearing; and had made no improvement (or even attempted to do so) in regard to her substance abuse even after her hospitalization for mental health issues.

An employee of JAYCO Family Services, who oversaw the petitioner's adult life skill classes and supervised visits, also testified. She stated that she had last seen the petitioner in June, 2022, and that the petitioner last visited her child in May of that year. Thereafter, all contact with the petitioner had ended on July 4, 2022, the petitioner had refused any type of treatment for her mental health issues, and the petitioner had no bond with her child. Another JAYCO Family Services employee testified that the petitioner had stopped all drug screening in June, 2022. The employee's attempts to follow-up with the petitioner were unsuccessful, but he had learned that she was evicted from her home in July, 2022. He also testified that the petitioner had refused any treatment that was offered for her mental health issues.

An employee of the Mercer County Day Report Center testified that she had supervised the petitioner's drug screens and the last contact she had had with the petitioner was on June 23, 2022. Before that date, the petitioner had four positive drug screens in April and May for combinations of amphetamines, methamphetamines, and MDMA (ecstasy or Molly).

The child's guardian ad litem informed the circuit court that he had been the guardian ad litem in the prior case involving the petitioner and this case presented the same situation. He stated that "[i]f anything, it's gotten worse, unfortunately, with [the petitioner's] drug use. And of course unfortunately, Judge, she's using meth which is – in my opinion creates kind of [the] worst symptoms, the worst delusions, paranoia." Upon being asked by the court whether she wanted to call any witnesses or say anything, the petitioner's guardian ad litem informed the court that in the two months since her appointment she had "not been able to make much progress with [the petitioner] directly, other than my contact with her here at the courthouse." The guardian ad litem told the court that the petitioner "does appear that she has some substantial issues, both substance abuse and with psychological and psychiatric conditions which she is unwilling to seek treatment for. And unfortunately, I think that that leaves the Court with very few options with respect to the – children . . . ."

5

At the conclusion of the DHS's case, the petitioner's counsel moved the circuit court for a continuance so that the petitioner could testify. The court denied the motion and thereafter, by dispositional order entered on May 15, 2023, terminated the petitioner's parental rights and denied her request for a post-dispositional improvement period. The court based its decisions on its findings of aggravated circumstances due to the petitioner's prior termination, the lack of stable housing, the petitioner's difficulties in caring for her own needs, the numerous illicit drugs found in the child's umbilical cord, the petitioner's failure to address her substance abuse problem, her failure to cooperate with any programs or services, including her failure to cooperate with the substance abuse program and mental health assistance, and her failure to drug screen. The petitioner appeals from this order.

The petitioner's sole assignment of error is that the circuit court erred by denying her request for a continuance and proceeding with the dispositional hearing that resulted in termination of her parental rights without her being present. "Whether a party should be granted a continuance for fairness reasons is a matter left to the discretion of the circuit court, and a reviewing court plays a limited and restricted role in overseeing the circuit court's exercise of that discretion." *See In re Tiffany Marie S.*, 196 W. Va. 223, 235, 470 S.E.2d 177, 189 (1996).

The petitioner argues that at the time of the dispositional hearing, she had asked the circuit court to appear by phone and had advised her counsel that she was looking for an apartment and employment in Abingdon, Virginia. She contends that even though the court had appointed a guardian ad litem to represent her, the guardian ad litem had not had significant contact with her. She further claims that the dispositional hearing occurred at a "crucial time" after her involuntary hospitalization for treatment of her mental illness which was a "significant debilitating condition that obviously had affected her ability to provide for her child and participate in the proceedings." She contends that she was "denied the right to testify on her own behalf and to present evidence that, perhaps, could have brought about a different outcome." Thus, she argues that the court abused its discretion by refusing her motion for a continuance.

Rule 7 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides that

> [e]xcept as provided for in Rule 5, extensions of time and continuances beyond the times specified in these rules or by other applicable law shall be granted only for good cause, regardless of whether the parties are in agreement. If a continuance is granted in accordance with this rule, the court shall set forth in a written order its reasons for finding good cause.

Further, this Court has held that "[c]hild abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on

6

a child's development, stability and security." Syl. Pt. 1, in part, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).

At the time the circuit court denied petitioners' request to appear by phone and for another continuance of the dispositional hearing the matter had been pending for over a year, and the dispositional hearing had been continued four times over a five-month period. Moreover, the petitioner was on her third attorney, had continued to fail to appear for hearings, had failed to cooperate in services offered by the DHS, including services that would address her significant drug abuse problem and her mental health issues, and had not visited with her child since before the adjudicatory hearing.[11] Instead, the petitioner stopped both communicating with the DHS and drug screening in June, 2022. Under these facts and circumstances, it is disingenuous for the petitioner to argue before this Court that she was not afforded the opportunity to testify and to present evidence. To the contrary, the circuit court gave the petitioner's counsel and guardian ad litem the opportunity to call witnesses and present evidence on her behalf but neither attorney did so.

Upon careful review of the appendix record in this case, the Court finds no abuse of discretion in the circuit court's decision to deny the petitioner's request to appear by phone, to deny her request for a fifth continuance, and to proceed with the dispositional hearing in which she failed to appear and which resulted in a termination of her parental rights.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 11, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

---

[11] The child's guardian ad litem reported in the status update filed with the Court that the petitioner "has not been present during the appeal status hearings that have followed her appeal." *See* W. Va. R. App. P. 11(j).