**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**November 12, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **K.K. and A.K.**

**No. 23-341** (Braxton County CC-04-2023-JA-6 and CC-04-2023-JA-7)

**MEMORANDUM DECISION**

Petitioner mother B.M. ("petitioner")[1] appeals her adjudication as an abusive and/or neglectful parent to infants K.K. and A.K.[2] Petitioner was adjudicated as a result of exercising visitation with the children in a manner contrary to the terms of the dispositional order entered in a prior 2012 abuse and neglect proceeding. The Department of Human Services ("DHS")[3] concedes that petitioner's adjudication on this basis was erroneous; however, the guardian ad litem ("GAL") argues in support of the circuit court's findings and adjudication.[4]

This Court has carefully considered the briefs and oral arguments of the parties, the submitted record, and the pertinent authorities. Upon review, we find that the circuit court erred in adjudicating petitioner abusive and/or neglectful and therefore vacate its June 7, 2023, order to that limited extent. Because there is no substantial question of law and no prejudicial error, a

---

[1] Petitioner mother appears by counsel Daniel K. Armstrong, Armstrong Law, PLLC. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorneys General Jason R. Trautwein and Wyclif S. Farquharson. Andrew C. Shaffer, Shaffer Law PLLC, appears as the children's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] Pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now referred to as the Department of Human Services.

[4] According to the parties' Rule 11 updates and the supplemental appendix record, following adjudication, petitioner was reunified with the subject children upon successful completion of an improvement period. The parental rights of the children's biological father, J.K.—who was granted legal and physical custody in the prior 2012 abuse and neglect proceeding—have been terminated.

1

memorandum decision is appropriate pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

## I. Factual and Procedural History

*The 2012 Proceeding*

In abuse and neglect proceedings initiated in 2012, petitioner and her then-husband, J.K., were adjudicated abusive and/or neglectful by the Circuit Court of Braxton County as to their children K.K. and A.K. (then three years old and two years old, respectively), on the basis of substance abuse (the "2012 proceeding").[5] After undergoing improvement periods in that proceeding, petitioner relapsed and custody of K.K. and A.K. was awarded to J.K.; petitioner was granted four hours of supervised visitation every other weekend, as outlined in the dispositional order dated April 16, 2014 ("the dispositional order").[6]

After the close of the 2012 proceeding, petitioner moved to Mercer County and, in 2015, regained her sobriety. Petitioner then obtained stable housing and employment as an EMT; she remarried and had two additional children with her now-husband. After regaining her sobriety, petitioner gradually began exercising visitation with K.K. and A.K. in excess of that outlined in the dispositional order from the 2012 proceeding, which visitation eventually included unsupervised, overnight and weekend visitation. Although she admitted awareness of the terms of her visitation as contained in the dispositional order, she testified that she believed that J.K. and/or his mother, S.K., maintained some degree of discretion over her visitation.

In 2018, J.K. was convicted of felony fleeing and spent the next five years either incarcerated or on parole. According to his testimony, when not incarcerated, he resided in a camper in his parents' driveway, but left the children in the care of his mother, S.K., and had a "non-existent" relationship with them.

*The Motion to Modify and Instant Petition*

On February 7, 2023—approximately nine years after entry of the dispositional order in the 2012 proceeding—K.K. (then fourteen years old) overdosed and was hospitalized. The hospital was unable to reach J.K. and therefore contacted petitioner, who went to the hospital. Petitioner testified that when J.K. finally arrived at the hospital, she became convinced he had relapsed and was actively using controlled substances. As a result, on February 16, 2023, petitioner filed a motion pursuant to West Virginia Code § 49-4-606(a) to modify the disposition

---

[5] Both the 2012 proceeding and the instant proceeding involve additional children of both petitioner and J. K., none of whom are at issue herein. The underlying petition also named J. K.'s mother, S. K., as an adult respondent.

[6] There is no indication that petitioner's parental rights were terminated in the 2014 dispositional order; the order merely places "physical and legal" custody with J.K. as the least restrictive alternative "at this time."

ordered in the 2012 proceeding.[7]  In her motion, petitioner asserted that J.K.'s whereabouts were unknown, the children had been left in his parents' care without a guardianship, and she was unable to obtain necessary medical information regarding K.K. due to the custodial arrangement. Petitioner further averred that J.K. had permitted her to exercise "significant, unsupervised time with the children" in the interim years and sought a modification of the disposition based on a material change in circumstances, i.e. her sobriety and J.K.'s apparent relapse.  Shortly thereafter, J.K. tested positive for controlled substances at his parole check, resulting in revocation of his parole and reincarceration.

A hearing on the motion to modify was scheduled for March 2, 2023, and the circuit court contemporaneously ordered DHS to investigate the allegations in the motion.  On March 1, 2023—the day before the scheduled hearing on the motion to modify—the assistant prosecutor filed a new abuse and neglect petition (the "underlying petition").  The underlying petition alleged that J.K. was again abusing illegal substances, that petitioner exercised visitation in violation of the terms contained in the dispositional order, and that J.K. permitted her to do so.

*Adjudication*

On March 27, 2023, an adjudicatory hearing was conducted as to the underlying petition. J.K. admitted his substance abuse, his intermittent incarceration and parole, and that he had effectively relinquished any parenting duties to his parents.  Petitioner testified that she regained her sobriety in 2015 and admitted that she then began exercising visitation in excess of the terms of the prior dispositional order.  Petitioner testified she had not sought modification of the dispositional order previously because she did not have the money to do so.[8]

The Child Protective Services ("CPS") worker assigned to the investigation testified that "[t]he only allegation with [petitioner], she was seeing the kids in violation of the [c]ourt order, unsupervised, but *I can't really say that's abuse and neglect*."  (Emphasis added).  When the circuit court inquired as to why the CPS worker did not consider that "failure to protect," he replied: "I

---

[7] West Virginia Code § 49-4-606(a) provides, in pertinent part:

> Upon motion of a child, a child's parent or custodian or the department alleging a change of circumstances requiring a different disposition, the court shall conduct a hearing pursuant to section six hundred four of this article and may modify a dispositional order if the court finds by clear and convincing evidence a material change of circumstances and that the modification is in the child's best interests.

[8] When asked why she violated the dispositional order, petitioner explained:

> Being able to see my girls, and being offered to keep them at night, and spend longer periods of time with them, I was not going to turn it down.  And at that point I had been clean, I had been doing good, and I showed them that I had been clean and doing good.

would think it's failure to protect on [J.K.] because he was the one that [was] ordered to supervise them."

The circuit court ultimately concluded that abuse and/or neglect had been proven as to both J.K. and petitioner. In its ruling from the bench, the court stated that petitioner "violated the order of this [c]ourt[] . . . by having [unrestricted] contact with the children" despite restrictions having been imposed in the 2012 proceeding "based upon her history and drug use[.]" The court stated its finding that petitioner was "an abusive and neglectful parent within the meaning of the laws of the State of West Virginia *by violating that [c]ourt's order.*" (Emphasis added). The court memorialized these findings in its June 7, 2023, amended adjudicatory order, finding that petitioner "violated the restrictions put in place by the prior [c]ourt's [o]rder and said failure constitutes abuse or neglect of the subject children."[9] This appeal followed.

## II. Standard of Review

We have held that as to adjudication, the circuit court's findings "shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Syl. Pt. 1, in part, *In Int. of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

## III. Discussion

Petitioner argues generally that the circuit court erred by adjudicating her as abusive or neglectful for violating the terms of a nearly ten-year-old dispositional order where there was no evidence the children were abused or neglected as a result of that violation. As indicated previously, DHS now agrees that petitioner's adjudication was erroneous because her failure to comply with the dispositional order does not satisfy the statutory definitions of "abuse" or "neglect."[10] The GAL, however, argues that petitioner's violation of the dispositional order supports the circuit court's adjudication because she knowingly violated established "parameters for who is safe to be around the [children] and under what circumstances." The GAL further

---

[9] The initial adjudicatory order included a description of the CPS worker's testimony which suggested his investigation revealed that petitioner "failed to protect the children . . . because she had knowledge of [J.K.'s] drug use and also knew that he was residing on the same property with the children." The order further specifically concluded that petitioner "failed to protect the children." The June 7 2023, amended adjudicatory order, however, removed those findings and conclusions. Therefore, while petitioner also advances additional arguments regarding her purported failure to protect the children from J.K.'s relapse, the removal of these findings from the adjudicatory order on appeal obviates the need to address this assignment of error.

[10] In its initial brief before this Court DHS argued in support of the circuit court's adjudication, offering arguments similar to those posited by the GAL. Shortly before oral argument, however, DHS moved to supplement its brief to withdraw its support of the circuit court's adjudicatory order and concedes that its findings were erroneous.

suggests that irrespective of whether petitioner's adjudication as to the underlying petition is vacated, the dispositional order from the 2012 remains in effect, requiring petitioner to demonstrate a change of circumstances to secure custodial modification.[11]

West Virginia Code § 49-1-201 defines "[a]bused child" as "[a] child whose health or welfare is being harmed or threatened by[] . . . [a] parent, guardian, or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." The statute further defines "[n]eglected child" as one whose "physical or mental health" is "harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education[.]" *Id*. Moreover, West Virginia Code § 49-4-601(i) requires that abuse or neglect must be established based upon "conditions existing at the time of the filing of the petition and proven by clear and convincing evidence." *See also* Syl. Pt, 8, in part, *In re C.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022) ("Pursuant to West Virginia Code § 49-4-601(i) (2019), a circuit court's finding that a child is an 'abused child' or a 'neglected child' must be based upon the conditions existing at the time of the filing of the abuse and neglect petition.").

We agree that under these particular circumstances petitioner's violation of the terms of visitation contained in the dispositional order—without more—fails to satisfy the statutory definition of "abuse" or "neglect." There was no evidence adduced below that petitioner's exercise of visitation in excess of the parameters outlined in the dispositional order "harmed or threatened" the children in terms of physical, mental, or emotional injury such as to render them "abused." There was likewise no evidence that the children's physical or mental health was "harmed or threatened" by petitioner's "refusal, failure or inability" to provide any of the statutory caretaking

---

[11] *But see In re H.T.*, 250 W. Va. 11, ___, 902 S.E.2d 143, 150-51 (2024) ("We have previously found that the termination of one parent's parental rights to be a material change in circumstances, warranting modification of the other parent's disposition.").

The GAL also raises a novel issue to which no party responds: whether appeal directly from an adjudicatory order constitutes an interlocutory appeal. Rule 11 of the West Virginia Rules of Appellate Procedure provides for "appeals from a circuit court final judgment in abuse and neglect cases[.]"

However, this Court regularly and historically has accepted and docketed appeals directly from adjudicatory orders. *See generally, e.g., In re A.D.*, No. 23-194, 2024 WL 2206547 (W. Va. May 13, 2024) (memorandum decision) (entertaining direct appeal from adjudicatory order where petitioner subsequently completed improvement period and reunified with child). Although we have not specifically addressed our jurisdiction to do so, we find support for immediate appeal from a circuit court's adjudicatory order contained within the language of West Virginia Code § 49-4-601(k) which provides: "Following the court's determination [of whether a child is abused/neglected at adjudication], *it shall ask the parents or custodians whether or not appeal is desired and the response transcribed*. A negative response may not be construed as a waiver." (Emphasis added). We therefore decline the GAL's invitation to dismiss the appeal on these grounds.

5

requirements such as to constitute "neglect." Petitioner offered unrebutted evidence that she was sober, employed, and in stable housing; more importantly, no evidence was presented to suggest that any other circumstances arising out of her unauthorized visitation subjected the children to statutorily defined abuse or neglect.

Further, to the extent petitioner was adjudicated abusive or neglectful based solely on her technical violation of the visitation terms of the dispositional order, petitioner was not adjudicated based on any harm or threat existing at the time the petition was filed. Instead, she was effectively adjudicated based on the threat of harm she posed nearly a decade prior due to her then lack of sobriety, which gave rise to the court-imposed visitation restrictions. The only evidence adduced below regarding conduct that ostensibly threatened the children's welfare was J.K.'s substance abuse and incarceration, causing him to relegate caretaking to his mother. This is precisely the alleged abuse and/or neglect from which petitioner proactively sought to protect the children by filing her motion to modify.

In that regard, we note that our resolution is influenced by petitioner's affirmative—albeit belated—attempt to obtain modification of the custodial arrangement by way of a properly filed motion to modify disposition. In fact, we see little reason why this matter should not have been addressed and resolved in the context of that motion, thus obviating the need for the court to make "new" findings regarding abuse and/or neglect as pertained to petitioner based on circumstances that were ill-suited for that determination. Petitioner's motion would have more than adequately brought J.K.'s conduct, petitioner's violation of the dispositional order, and any required services or modification before the court for consideration without the necessity of shoehorning petitioner's unauthorized visitation into the statutory definition of abuse or neglect. *See, e.g., In re D.G.*, No. 22-767, 2023 WL 6144639, at *3 (W. Va. Sept. 20, 2023) (memorandum decision) (affirming modification of disposition where "worsening of petitioner's condition, as detailed above, was the change in circumstances that justified modification[]"); *In re J.P.*, No. 19-0472, 2020 WL 6542021, at *4 (W. Va. Nov. 6, 2020) (memorandum decision) (affirming termination of rights by way of modification due to worsening of parent's mental condition and recognizing that modification, rather than new petition, "while perhaps unusual in light of the passage of time since the disposition in this matter, is nonetheless entirely appropriate pursuant to the express language of the statute.").[12]

---

[12] We note that the appendix record reflects considerable uncertainty stemming from the continuing jurisdiction of the circuit court judge who presided over the 2012 proceedings as described in Rule 6 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, the separately filed motion to modify in the 2012 proceedings, and their interplay with the newly filed abuse and neglect petition at issue in this appeal. Although, upon filing, the underlying petition was originally assigned to the judge presiding over the 2012 proceedings, for reasons unclear from the record, it was immediately reassigned to a different judge. We note that in addition to the authority cited above endorsing the use of dispositional modification under West Virginia Code § 49-4-606 in circumstances such as these, Rule 4 provides that

> [a] circuit court before which a civil petition is filed . . . may order
> any other proceeding [except criminal or delinquency] pending

(continued . . .)

6

Accordingly, because petitioner's violation of the terms of the dispositional order fails to satisfy the statutory definition of abuse or neglect, the circuit court's adjudication of petitioner must be vacated. We issue a word of caution, however, about the extremely limited application of our determination herein. Certainly, in most instances, violation of court-ordered or other restrictions or requirements issued in the course of abuse and neglect proceedings—particularly as pertains to visitation—would likely constitute a threat to children's safety or well-being and/or affirmatively expose them to continued or additional conditions of abuse and/or neglect. Following entry of a final dispositional order, nothing in our statutory scheme requires DHS to demonstrate the continued existence of conditions of abuse or neglect to justify the court's dispositional decision and any court-imposed restrictions. A parent or guardian who seeks to modify those determinations must take appropriate measures as prescribed in West Virginia Code § 49-4-606 and meet the burden outlined therein. Therefore, our ruling in this case should not be read as condoning adjudicated parents or guardians violating court-imposed or other restrictions in abuse and neglect matters upon "self-proclaimed" correction of the underlying conditions of abuse or neglect.

Rather, in the instant case, we note the unique and substantial change in circumstances from the time the visitation restrictions were imposed—indeed, a complete transposition of the parent who originally posed a threat to the children's well-being and safety and the parent to whose sole custody they were returned. These circumstances prompted petitioner to affirmatively seek court intervention to examine whether she had corrected conditions of abuse or neglect such as to justify restoration of her custodial rights. That said, however, there is little question that petitioner's violation of the dispositional order subjected her to potential contempt or other appropriate sanctions. *See generally State ex rel. Dilly v. Hall*, 250 W. Va. 155, 902 S.E.2d 487 (2024) (discussing circuit court's contempt powers and procedural requirements). More importantly, her lack of compliance jeopardized the very relief she sought by way of modification and called into question her suitability for visitation or reunification in the underlying matter. *See In re N.A.*, 227 W. Va. 458, 469, 711 S.E.2d 280, 291 (2011) (discussing "continued and repeated violations of orders entered by the circuit court regarding visitation by the children's mother with the subject children throughout the proceedings[]" as affecting permanent placement). However, under these limited circumstances and the evidence presented below, that violation did not constitute abuse or neglect of the subject children under our statutory definitions; petitioner's adjudication must therefore be vacated.

## IV. Conclusion

---

before another circuit court[] . . . which arises out of the same facts alleged in the civil petition or involves the question of whether such abuse and neglect occurred transferred to the court where the civil petition is pending and may consolidate such proceedings[.]

Although unnecessary to our resolution, we remind the lower courts generally that our rules of procedure are designed expressly to "ensure a coordinated decision-making process" and encourage a collaborative approach to effectuate this goal. W. Va. R.P. Child Abuse & Neglect Proc. 2.

For the foregoing reasons, we vacate that portion of the June 7, 2023, order of the Circuit Court of Braxton County, West Virginia, adjudicating petitioner as abusive and/or neglectful.

Vacated.

**ISSUED**: November 12, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn